[No. 5037–4–II. Division Two. January 31, 1983.]

SIDNEY REED, *Appellant,* v. CARSON F. ELLER, ET AL, *Respondents.*

*Bryan Chushcoff,* for appellant.

*Richard Brosey* and *Geoffrey C. Cross,* for respondents.

REED, J.—A real estate vendor repeatedly, but unwittingly, permitted his purchaser to make late payments on an earnest money agreement. Can he enforce a "time is of the essence" clause and declare a forfeiture? The trial court answered in the affirmative. The vendee maintains that strict performance was waived or that the vendor is estopped from enforcing the "time is of the essence" provision. We agree and reverse.

In the spring of 1977, Sidney Reed was shown a small parcel of Lewis County land by Mr. Hayertz, an agent for Sundown Land Brokers, Inc. Reed decided to purchase the property for $7,950 but lacked funds for a substantial down payment. Consequently, Mr. Hayertz drafted an offer in the form of a "continuing earnest money agreement" to present to the owners, Carson and Linda Eller. The agreement was dated March 18, 1977 and, after receipting for a cash down payment of $200, called for monthly payments of $75 per month, including principal *and interest.* Payments on the deferred balance were to commence April 14, 1977, and

continue until the contract balance was reduced to $7,000. Then, a real estate contract was to be executed. All the particulars of the contract to be executed were agreed upon; a standard form of such a contract was printed on the reverse side of the earnest money agreement and made a part thereof. The earnest money agreement provided that "time is of the essence," and a handwritten provision gave the Ellers the right to declare a forfeiture in the event of default, with the right to retain, as liquidated damages, all monies theretofore collected.

Mr. Hayertz selected Banner Escrow Company (Banner) to close the transaction and collect the monthly payments. Under the terms of the agreement, Banner was to distribute one-half of each payment to Sundown Land Brokers, Inc., to apply on its commission, and one-half to the Ellers.[1] The confusion giving rise to this lawsuit was initiated when Hayertz waited until March 31 to deposit Reed's $200 down payment with Banner and establish the escrow. For reasons unknown, Banner deducted interest and applied the balance of $142.03 against the first payment due on April 14, 1977. When Reed made his first $75 payment on April 15, it was credited against the May 14 payment. Thereafter payments were made as reflected by Banner's ledger sheet, which is reproduced herein. Although Reed's March 1978 check was returned marked "insufficient funds," Banner's officer testified that the check was later honored.

---

[1] The exact language is:

"It is understood that Brokerage due Sundown Land Brokers shall be taken out of earnest money and monthly payments." There is a further proviso that "earnest money and this agreement shall be held by Banner Escrow for the benefit of the parties hereto." In actual practice, Banner periodically remitted one-half of Reed's payments to Sundown and one-half less its collection costs to Eller. Eller testified this was what he expected of Banner in addition to policing Reed's payments.

Mr. Bryan Thuckeoff.

| | | Collectors | NO. 2 | NO. 2 | NO. 1 | JAN. | FEB | MAR | JARSON | ELLER | JUNE | JULY | AUG. | SEPT. | OCT | NOV. | DEC | | NO. BAL. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | FOLLOWUP | | | | | | | OLDEST ITEM | | | | | | | | | |

| NAME | REED, Sidney M. | | ACCT. NO. | C 77#137 |
|---|---|---|---|---|
| ADDRESS | 3314 96 St. S. SP.31 ~~8002 South Park Avenue~~ | | SHEET NO. 1 | .0875 |
| CITY | Tacoma, Washington 98409 | | CREDIT LIMIT | |

$7,950. beg. 4/14/77 @ $75.00/mo until $7,000.

$795.00 def. comm. to Sundown

| | | DATE | DESCRIPTION | CHARGES | V | CREDITS | BALANCE | PREVIOUS BALANCE |
|---|---|---|---|---|---|---|---|---|
| 795.00 | | 3/18/77 | BALANCE FORWARD | | | | | $7,950.00 |
| 1675.99 | 3/31 | 4/14 | Reed | 200 00 | | 57 97 | 142 03 | |
| 1552.50 | 4/15 | 5/14 | Reed | 75 00 | | 56 93 | 18 07 | |
| 620.00 | 5/20 | 6/14 | Reed | 25 00 | | 56 80 | 18 20 | |
| | 6/23 | 7/14 | Reed | 25 00 | | 56 67 | 18 33 | |
| 745.00 | 8/2 | 8/14 | Reed | 25 00 | | 56 53 | 18 47 | |
| 507.50 | 7/13 | 9/14 | Reed | 75 | | 56 40 | 18 60 | |
| 470.00 | 10/18 | 10/14 | Reed | 75 | | 56 26 | 18 74 | |
| 43,950 | 12/16 | 11/14 | Reed | 75 | | 56 13 | 18 87 | |
| 34500 | 12/30 | 12/14 | Reed | 75 | | 55 99 | 19 01 | |
| | | | | 800 | | 507.63 | 271 | |
| | 1977 | | | | | | | |
| 250.50 | 1/17 | 1/14 | Reed | 75 | | 55 85 | 19 15 | |
| 338.00 | 3/22 | 2/14 | Reed | 75 | | 55 71 | 19 29 | |
| 37.50 | 6/2 | 3/14 | Reed | 75 00 | | 55 57 | 19 43 | |
| 415.00 | 7/6 | 4/14 | Reed | 75 00 | | 55 43 | 19 57 | |
| | 7/6 | 5/14 | Reed | 75 00 | | 55 29 | 19 71 | |
| 175.00 | 7/6 | 6/14 | Reed | 75 00 | | 55 14 | 19 86 | |
| | 1978 | | | 450 00 | | 332 99 | 117 01 | |
| | | | | | | accept | | |
| | | | payments | | | 7-12-78 | | |
| | | | | 150 00 | | 111 56 | 38 44 | |

FORM T-401
FORM T-401-Z (WITH DUPLI-RITER PATCH)

Peel-Print SYSTEMS CELINA, OHIO · DALLAS · LOS ANGELES LITHO IN U.S.A.

EXHIBIT #3

On June 14, 1978, the Ellers wrote to Reed, using the address on the earnest money agreement, advising him that the contract was canceled. Reed having moved, the letter was returned unclaimed. Banner had Reed's correct address and was corresponding with him about his delinquencies and urging him to bring his payments up to date. On July 6, 1978, Reed, not having received Eller's June 14 letter, made a $225 payment which brought his account current or nearly so. On July 10, the Ellers sold the property on contract to Thomas and Jacqueline Porreca. By letter dated July 12, 1978, the Ellers instructed Banner to return Reed's last payment. Reed brought this action (1) for specific performance or, in the alternative, monetary damages, and (2) to quiet title. The trial court gave judgment in favor of the Ellers and Porrecas. In doing so, it did not reach the priority issue as between Reed and Porreca.

■ We deal first with Ellers' contention, which the trial court accepted, that the earnest money provisions are somehow separable from the real estate sale aspects of the agreement, and consequently that the rules applicable to waiver and estoppel do not apply. It is true that Hayertz used the designation "intrim" [*sic*] in describing the agreement, and that accumulation of a down payment was a condition to be met by Reed before Ellers could be called upon to execute the final contract. The fact remains, however, that the gist of the agreement was the sale and purchase of the real estate described. Reed was granted immediate possession and obligated himself to pay interest on the purchase price balance as he built toward the down payment. The document contained all the particulars necessary to entitle either party to specific enforcement. *Hedges v. Hurd,* 47 Wn.2d 683, 289 P.2d 706 (1955). *See also* 1 V. Towne, Wash. Prac. § 42 (2d ed. 1976). In fact, the agreement provides for that exact remedy. We hold, therefore, that the transaction must be treated as an executory contract for the sale of real estate and apply the ordinary rules governing forfeitures.

■■ Where a contract provides that "time is of the

essence," a seller may insist on strict compliance with time of payment provisions. 3A A. Corbin, *Contracts* § 754 (1960). Upon the first default, the seller may declare an enforceable forfeiture. Forfeitures, however, are not favored; thus, the courts are prone to find a waiver or estoppel unless the right to a forfeiture is so clear as to permit no denial. *Kaufman Bros. Constr., Inc. v. Estate of Olney,* 29 Wn. App. 296, 628 P.2d 838 (1981). The rule in Washington is succinctly summarized in *Bulmon v. Bailey,* 22 Wn.2d 372, 376–77, 156 P.2d 231 (1945):

> Time of payment of the installments of purchase price was made of the essence of the contracts, and if the vendors had from the beginning *insisted* upon strict performance they could have forfeited either contract upon the happening of the first default thereof. But they did not do this. They *passively* granted indulgences to the respondent by *permitting* payments to be made after they were due and accepting them without protest and by *permitting* payments to remain unpaid without in any way making known to her that strict performance would be required of her. When such a situation is *allowed to develop* by a vendor in a contract like those now before us, strict performance as to time of payment is *waived* and the vendor cannot put the vendee in default or claim a forfeiture without first having given notice of intention so to do with a reasonable time within which the vendee may perform.

(Italics ours.) *See also Shaw v. Morrison,* 145 Wash. 420, 260 P. 666 (1927); *Ryker v. Stidham,* 17 Wn. App. 83, 561 P.2d 1103 (1977); *Harrison v. Puga,* 4 Wn. App. 52, 480 P.2d 247, 46 A.L.R.3d 415 (1971).

Thus, if Reed had been sending payments directly to the Ellers, the latter would have been required to give Reed notice and a reasonable time to remedy his defaults prior to declaring a forfeiture. The crux of this appeal is whether the Ellers sufficiently insulated themselves from the collection process to avoid the *Bulmon v. Bailey* rule.

 The parties indulge in considerable debate as to whether Banner was Ellers' agent, so that Banner's knowing acceptance of late payments is chargeable to Ellers. We

find it unnecessary to reach this issue. Regardless of how Banner's function is characterized, if the "time is of the essence" clause was to be strictly enforced, the Ellers were responsible for monitoring Reed's performance. If, as Ellers insist, this duty was not delegated to Banner, it follows that they retained the duty themselves. As evidenced by their choice of collection methods and bookkeeping practices, the Ellers were content to close their eyes to the status of Mr. Reed's account. Thus, they assumed the risk that payments were not being made on time and that they might be precluded from declaring a strict forfeiture. Put another way, in the face of repeated late payments, silence on the part of a vendor may reasonably lead a vendee to believe that time of performance will not be rigidly enforced. 3A A. Corbin, *Contracts* § 754 (1960).

The risk that such conduct might bar strict enforcement of the "time is of the essence" clause matured into reality as Reed habitually disregarded this provision of the contract without protest from the Ellers. Accordingly, the Ellers could not suddenly declare a forfeiture without first giving notice of their intention to do so and allowing a reasonable time for performance. *Shaw v. Morrison, supra; Snuffin v. Mayo,* 6 Wn. App. 525, 494 P.2d 497 (1972).

Having determined that the Ellers improperly declared a forfeiture, the question remains whether Reed's interest in the property is superior to that of the Porrecas. The Porrecas have not participated in this appeal. As we understand their position, however, they rely on the doctrine that a bona fide purchaser for value takes free of unrecorded antecedent interests in the same property, provided his or her interest is recorded first. *Biles–Coleman Lumber Co. v. Lesamiz,* 49 Wn.2d 436, 302 P.2d 198 (1956). *See also* RCW 65.08.070. Unfortunately for Porrecas, they do not qualify as bona fide purchasers for value. "A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration." *Glaser v. Holdorf,* 56 Wn.2d 204, 209, 352

P.2d 212 (1960).

The Porrecas are vendees on an executory contract. They cannot become bona fide purchasers until they have acquired *legal title* by paying the full contract price. *Peterson v. Paulson,* 24 Wn.2d 166, 163 P.2d 830 (1945); *McVean v. Coe,* 12 Wn. App. 738, 532 P.2d 629 (1975).[2]

Reversed and remanded for entry of judgment reinstating Reed's contract and granting specific performance as against Ellers and quieting his title as against Porrecas. The judgment shall provide that Reed forthwith pay into court for Ellers such sum as the court determines, after a hearing if necessary, will reduce the contract balance to $7,000 and that the parties execute the contract as agreed. Should Reed fail to perform as ordered he shall be deemed to have forfeited all right, title and interest in the property and all payments theretofore made as liquidated damages.

PETRICH, C.J., concurs.
WORSWICK, J., concurs in the result.

Reconsideration denied March 10, 1983.

Review denied by Supreme Court May 10, 1983.

---

[2]Ellers contend that *Cascade Sec. Bank v. Butler,* 88 Wn.2d 777, 567 P.2d 631 (1977) *sub silentio* overrules *Peterson v. Paulson,* 24 Wn.2d 166, 163 P.2d 830 (1945). We do not agree. In *Cascade,* the Supreme Court overruled prospectively the case of *Ashford v. Reese,* 132 Wash. 649, 233 P. 29 (1925), but refused to adopt outright the venerable doctrine of equitable conversion. However, the *Cascade* court may have characterized a vendee's interest ("real property") for judgment lien purposes, it did not purport to alter the legal title requirement of the bona fide purchaser rule.