[No. 24504–0–I.   Division One.   January 22, 1991.]

H.D. TOMLINSON, ET AL, *Respondents,* v. DAVID A. CLARKE, ET AL, *Appellants.*

*William B. Foster,* for appellants.

*Dennis Jordan,* for respondents.

COLEMAN, J.—David and Cynthia Clarke appeal from the trial court's ruling that they are not bona fide purchasers of the parcel of land in dispute and that the respondents, Gayle and Annie Whitsell, have a superior interest in that land subject to the provisions of the real estate contract between the Whitsells and H.D. Tomlinson. We reverse.

In 1979, Tomlinson owned the Snohomish County real estate involved in this case and legally described in the trial court's findings of fact. On March 23, 1979, Tomlinson sold one parcel of land to Gayle and Annie Whitsell through an executory real estate contract. At that time, the state recording act included RCW 65.08.080. That provision, repealed by the 1984 amendments to the act, read as follows:

> An executory contract for the sale or purchase of real property or an instrument granting a power to convey real property as the agent or attorney for the owner of the property, when acknowledged (with the acknowledgment certified) in the manner to entitle a conveyance to be recorded, may be recorded in the office of the recording officer of any county in which any of the real property to which it relates is situated, and when so recorded shall be notice to all persons of the rights of the vendee under the contract.

Former RCW 65.08.080.[1]

The Whitsell contract was recorded in the office of the auditor of Snohomish County on October 19, 1982, more than 3½ years after the sale. Included in the legal description of that contract was 125 linear feet of land situated south of Vernon Road, along the shore of Lake Stevens. The Whitsells had intended to purchase only the western 50 linear feet of that shoreland, but the error in the legal description initially went unnoticed.

On December 26, 1979, Tomlinson sold a second parcel of land to David and Cynthia Clarke, also through a real estate contract. The Clarkes recorded their contract in the office of the auditor of Snohomish County on February 7, 1980, pursuant to former RCW 65.08.080. The Clarke contract included the same 125 linear feet of the shoreland south of Vernon Road that was also described in the Whitsell contract. When the Clarkes purchased the land

---

[1] In addition to repealing former RCW 65.08.080, the 1984 amendments to the recording act clarified that an executory contract is a conveyance capable of being recorded under the recording act. *Compare* former RCW 65.08.060(3) (excluding executory contracts from the definition of a conveyance) *with* current RCW 65.08.060(3) (eliminating that exception). .

described above, they had no knowledge that the Whitsells previously had entered into a contract with Tomlinson or that the Whitsell contract included the same 125 linear feet of shoreland.[2] At some point in 1985, the parties discovered the conflict concerning the 50 feet of shoreland that the Whitsells originally intended to purchase.

On February 4, 1987, the Whitsells and Tomlinson initiated legal proceedings in order to resolve the matter. The Whitsells asked the court to find that their interest was superior to the Clarkes' interest in the disputed 50 linear feet of land, while Tomlinson asked the court to reform the two contracts to reflect that the Whitsells had purchased the western 50 linear feet and the Clarkes had purchased the remaining 75 linear feet. Tomlinson claimed that a mutual mistake justified such reformation.

The trial court held that no such mutual mistake had occurred, and it concluded that the Whitsells' equitable interest in the disputed 50 feet of land was superior to the Clarkes' interest in that land because the Whitsells purchased the land first. According to the court, the fact that the Clarkes recorded their contract before the Whitsells recorded theirs was irrelevant because, as vendees to an executory contract, the Clarkes had not acquired legal title and thus could not be bona fide purchasers for value.

We first decide whether a vendee may acquire the status of a bona fide purchaser after purchasing real property through an executory contract and recording the contract, but before acquiring legal title by making all of the installment payments.

One of the earliest Washington cases purporting to settle the law on the matter was *Ashford v. Reese,* 132 Wash. 649, 233 P. 29 (1925), *overruled in Cascade Sec. Bank v. Butler,* 88 Wn.2d 777, 567 P.2d 631 (1977). In *Ashford,* the court held that a vendee to an executory contract for the sale of

---

[2]The trial court specifically found that the Clarkes "were not aware of the WHITSELLS' purchase of the adjoining lots, or of the WHITSELLS' claim to any portion of the shore lands lying south of Vernon road[.]"

real property did not bear the risk of loss for that property. *Ashford,* at 650–51. That court relied on precedent which had held that an executory contract of sale in Washington conveyed no title or interest, either legal or equitable, to the vendee. *Ashford,* at 650–51 (citing *Schaefer v. E.F. Gregory Co.,* 112 Wash. 408, 192 P. 968 (1920)). Significantly, one of the dissenting judges in *Ashford* maintained that the majority erroneously interpreted the precedent it relied upon, which had only intended to enforce valid forfeiture clauses fairly negotiated by the parties to executory contracts of sale. *Ashford,* at 662 (Tolman, J., dissenting).

A long line of cases ensued, whittling away the broad *Ashford* holding and granting the vendees of executory contracts of sale a wide variety of rights and interests, including the recognition that such vendees have "'substantial rights'", a "'valid and subsisting interest in property'", and a "'claim or lien' on the land[.]" *Cascade,* at 781. In addition, the Washington Supreme Court has acknowledged in various decisions that such vendees have the right to possess, control, and cultivate the land; that their interest in the land is mortgageable; and that their interest is personal property for purposes of inheritance taxes, succession, and administration. *See Cascade,* at 782.

*Cascade* prospectively overruled *Ashford* and held that "a real estate contract vendee's interest is 'real estate' within the meaning of the judgment lien statute." *Cascade,* at 782. In so holding, the court emphasized that the cases decided after *Ashford* determined the rights and interests of vendors and vendees "based upon a realistic examination of the nature of the interest in a particular context." *Cascade,* at 784. In the present case, the Clarkes argue that in the context of a properly recorded executory contract, a vendee's rights should include the status of bona fide purchaser for value regardless of the executory nature of the contract or the fact that legal title would not vest in the vendee until the contract was fulfilled.

To support their argument, the Clarkes cite *In re McDaniel,* 89 Bankr. 861 (E.D. Wash. 1988), a bankruptcy

case that thoroughly analyzed the Washington law regarding the interests created by an executory real estate contract. That court concluded that under such a contract, a vendee acquires a property interest in the real estate, while the vendor possesses a lien–type security device. *McDaniel,* at 869.

Moreover, the Clarkes note that executory real estate contracts were deemed to be conveyances in *Terry v. Born,* 24 Wn. App. 652, 653–54, 604 P.2d 504 (1979). *Terry,* like *McDaniel,* also stated that "[a] contract seller's retention of title is a security device functionally similar to a real estate mortgage or deed of trust." *Terry,* at 655.

The Whitsells, in response, assert that under *Peterson v. Paulson,* 24 Wn.2d 166, 163 P.2d 830 (1945), a bona fide purchaser for value "must have paid the purchase price and have acquired the legal title without notice of [any] prior equity." *Peterson,* at 180.[3] The Whitsells argue that because neither they nor the Clarkes made all of the necessary payments under their respective executory contracts or received legal title for the disputed parcel of land, neither of the two parties could claim status as a bona fide purchaser.

In addition, the Whitsells rely on *Reed v. Eller,* 33 Wn. App. 820, 664 P.2d 515 (1983), which held that a vendee of an executory contract must first obtain legal title by paying the full contract price before acquiring the status of a bona fide purchaser. *Reed,* at 827. *Reed* further concluded in a footnote that *Cascade* had not *sub silentio* overruled *Peterson* and, thus, did not eliminate the requirement of having legal title before qualifying as a bona fide purchaser. *Reed,* at 827 n.2.

■■ We expressly decline to follow *Reed.* That court failed to give proper weight to the Supreme Court's holding

---

[3]*Peterson* noted, however, that although purchasers of real property under an executory contract do not acquire any title or interest in the property until the contract is fully performed, such contracts "do create and vest in the vendee an enforcible [*sic*] right against the land which is subject to the contract." *Peterson,* at 178–79.

in *Cascade* and its unavoidable weakening of *Peterson* and other cases that relied upon *Ashford* as the prevailing law.[4] In *Cascade,* the court recognized that in many previous cases it had "defined and classified the interest of vendors and vendees for a variety of purposes . . . based upon a realistic examination of the nature of the interest in a particular context." *Cascade,* at 784. Such a realistic examination of the issue presented here leads us to conclude that a vendee to an executory contract should have the same opportunity to enjoy the protection of bona fide purchaser status as someone financing the transaction in some other way, such as through a deed.

Further, *Reed* gave no consideration to what was then RCW 65.08.080, a provision that granted executory contracts the protection of the recording act even though such a contract was not yet termed a "conveyance." It is significant that the Legislature promptly expressed its disapproval of the *Reed* holding by repealing what was formerly RCW 65.08.080 and amending the recording act to make indisputably clear that executory contracts were property conveyances afforded the full protection of the recording act. Thus, an executory contract for the sale of real estate is a conveyance and may be recorded as all other conveyances are recorded, and

> [e]very such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor . . . of the same real property or any portion thereof whose conveyance is first duly recorded.

RCW 65.08.070. Consequently, a vendee of an executory real estate contract who has no notice of competing interests in the property at issue and who properly records the

---

[4]*See, e.g., McVean v. Coe,* 12 Wn. App. 738, 742–43, 532 P.2d 629 (1975) (in reliance upon *Kendrick v. Davis,* 75 Wn.2d 456, 464, 452 P.2d 222 (1969), *Peterson,* and former RCW 65.08.080, the *McVean* court concluded that recording an executory contract does not affect another party's prior, unrecorded equitable interest).

executory contract may acquire the status of bona fide purchaser.[5]

We next address the Whitsells' argument that the 1984 amendments to the recording act do not apply retroactively to affect their interest in the disputed parcel of land. The Whitsells claim that such a retroactive application of the amendments would interfere with their contractual obligations and would deprive them of their property interest without due process of law.

A statute may be given retroactive application if it relates "to practice, procedure or remedies and [does] not affect a contractual or vested right" or impose a penalty. *Godfrey v. State*, 84 Wn.2d 959, 961, 530 P.2d 630 (1975). In addition, if the statute is clearly remedial and curative, it should be applied retroactively even if the Legislature did not expressly state that intention. *Johnson v. Continental West, Inc.*, 99 Wn.2d 555, 559, 663 P.2d 482 (1983). As noted in *Johnson,* "'[i]f [an] amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act.'" *Johnson,* at 559 (quoting 1A C. Sands, *Statutory Construction* § 22.31 (4th ed. 1972)).

As discussed above, the Legislature appears to have passed the 1984 amendments to the recording act in order to overrule *Reed,* which was decided in 1983. Those amendments plainly state the Legislature's intent to recognize executory real estate contracts as conveyances subject to the protection of the recording act, contrary to the effect of *Reed. See McDaniel,* at 867 n.3.

---

[5]After reviewing a comparable series of cases under California law, the Ninth Circuit likewise held that a purchaser under an uncompleted land sale contract was not automatically precluded from enjoying the status of bona fide purchaser merely because of the nature of the conveyance. *See Perry v. O'Donnell,* 749 F.2d 1346, 1350–51 (9th Cir. 1984).

A retroactive application of the 1984 amendments in effect confirms that a pre–1984 executory contract is a conveyance that qualifies for full protection under the recording act. Such an interpretation does not impair a vested right. Instead, it provides a means of protecting that right. Further, the terms of the Whitsells' contract are not altered by such retroactivity. The Whitsells' contract would become void not because their executory contract now qualifies as a conveyance but because they failed to protect their interests with the means available to them when they entered into it.

■ Moreover, equitable considerations lead to the same conclusion. Prior to the 1984 amendments, the recording act provided vendees of executory contracts the means to record their interests and give constructive notice of those interests to all future purchasers. *See* former RCW 65.08-.080. The Whitsells failed to avail themselves of this opportunity to protect their interest in the disputed parcel of land and, consequently, a records search could not have alerted the Clarkes to a possible conflict. Indeed, the trial court specifically found that the Clarkes were unaware of the Whitsells' claim to the disputed parcel. As a result, the Whitsells' own failure to record their contract estops them from asserting that their interest in the parcel is superior to that of the Clarkes.

### Attorney Fees

Because Tomlinson did not prevail on his action for reformation, the trial court ordered Tomlinson to pay the Clarkes' attorney fees at trial pursuant to the parties' contract and RCW 4.84.330.[6] On the same grounds, the Clarkes request attorney fees on appeal from Tomlinson.

---

[6]RCW 4.84.330 states in part:

"In any action on a contract or lease . . . where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether . . . the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements."

This request is not addressed in respondents' brief. Because the Clarkes were required to bring this appeal to enforce their contract with Tomlinson and have prevailed, they are entitled to an award of attorney fees from Tomlinson contingent upon their compliance with RAP 18.1.

The trial court's judgment regarding the Clarkes' interest in the disputed parcel is reversed and the cause remanded for entry of an order identifying the Clarkes as bona fide purchasers of the property with an interest superior to that of the Whitsells.

PEKELIS and FORREST, JJ., concur.

Review granted at 116 Wn.2d 1022 (1991).