[No. 58014-6.    En Banc.    February 27, 1992.]

H.D. TOMLINSON, ET AL, *Petitioners*, v. DAVID A. CLARKE, ET AL, *Respondents*.

*Dennis Jordan, Inc., P.S.,* by *Dennis Jordan,* for petitioners.

*William B. Foster* (of *Hutchison & Foster*), for respondents.

ANDERSEN, J. —

## FACTS OF CASE

This is a dispute over a small parcel of lakefront property in Snohomish County. The sole issue is whether a purchaser who is buying land under a real estate contract can be a

bona fide purchaser and, as a consequence, have an interest in the land that is superior to a prior unrecorded interest of another purchaser who also is buying the land under a real estate contract.

We hold that purchasers under real estate contracts, like those who purchase real property under other financing devices, may take advantage of the bona fide purchaser doctrine. That doctrine provides that a good faith purchaser for value, who is without actual or constructive notice of another's interest in the property purchased, has the superior interest in the property.[1] Constructive notice exists if the prior interest is recorded.[2]

This case involves land located on Lake Stevens in Snohomish County.

In March 1979 Gayle and Annie Whitsell agreed to buy a parcel of land from H.D. Tomlinson. The property consisted of land lying somewhat north of Vernon Road, as well as 50 linear feet of lakefront property south of Vernon Road. The 50-foot strip of lakefront property was to adjoin 50 feet of similar property already owned by the Whitsells. The property was sold to the Whitsells under a real estate contract and included a legal description of the land both north and south of Vernon Road.

Unfortunately, the legal description was incorrect. Rather than describe the 50-foot strip the Whitsells intended to buy, the contract described all of the shoreline property owned by Tomlinson — a 125-foot strip of lakefront. Neither the Whitsells nor Tomlinson became aware of this mistake until 1986.

The real estate contract between Tomlinson and the Whitsells was executed on March 23, 1979. The Whitsells intentionally did not record the contract at that time because they wanted to avoid a temporary moratorium on subdividing within the city limits of Lake Stevens. The contract was eventually recorded on October 19, 1982.

---

[1]*Glaser v. Holdorf*, 56 Wn.2d 204, 209, 352 P.2d 212 (1960).

[2]RCW 65.08.070; *Kendrick v. Davis*, 75 Wn.2d 456, 464, 452 P.2d 222 (1969).

Nine months after selling the land to the Whitsells, Tomlinson sold a different parcel of land, just north of Vernon Road, and the lakefront property to David and Cynthia Clarke. The Clarkes intended to purchase the entire 125-foot strip of lakefront property owned by Tomlinson, as well as the parcel of land just north of the road. Like the property sold to the Whitsells, this property was sold under a real estate contract.

The land, as legally described in the Tomlinson-Clarke contract, included the entire strip of lakefront property — the identical lakefront land sold to the Whitsells under their contract with Tomlinson.

■ At the time the Clarkes purchased the property, they were not aware of the Whitsells' purchase of land and were not aware that the Whitsells claimed an interest in the 50-foot strip of lakefront. The trial court's finding of fact with respect to the Clarkes' lack of knowledge was not challenged by the Whitsells and thus is a verity on appeal.[3] The contract between Tomlinson and the Clarkes was executed December 26, 1979, and was recorded about 5 weeks later, on February 7, 1980.

In 1986 the parties discovered that both real estate contracts conveyed an interest in the same 125-foot strip of lakefront property.

The Whitsells and Tomlinson sued the Clarkes, asking the superior court to find that a mutual mistake justified reformation of the contract between Tomlinson and the Clarkes. The Clarkes responded by asking the court for an order establishing them as the owners of the lakefront property or, alternatively, for damages.

The trial court found that the Clarkes were unaware of the Whitsells' interest in the lakefront property until 1986. It also found that neither the Clarkes nor the Whitsells had fully performed under the contracts and therefore neither had legal title to the property. The trial judge then ruled that because legal title had not passed to the Clarkes before

[3]*Nearing v. Golden State Foods Corp.*, 114 Wn.2d 817, 818, 792 P.2d 500 (1990).

they learned of the Whitsells' interest in the property, the Clarkes could not be bona fide purchasers for value. The court concluded that the law to be applied to equitable interests in land was "first in time, first in right". Thus, the Whitsells, being the first to purchase the property, were held to have a superior interest in the property.

The Clarkes appealed and the Court of Appeals, Division One, reversed.[4] The Court of Appeals expressly declined to follow *Reed v. Eller*, 33 Wn. App. 820, 664 P.2d 515, *review denied*, 99 Wn.2d 1015 (1983), a Division Two case which held that a purchaser under a real estate contract could not be a bona fide purchaser because *legal* title must pass in order for bona fide purchaser status to be achieved.

The Court of Appeals in *Tomlinson v. Clarke*, 60 Wn. App. 344, 803 P.2d 828, *review granted*, 116 Wn.2d 1022 (1991), determined that the prevailing law required it to hold that a purchaser under a real estate contract "should have the same opportunity to enjoy the protection of bona fide purchaser status as someone financing the transaction in some other way, such as through a deed." *Tomlinson*, 60 Wn. App. at 350. The Court of Appeals also held that a 1984 amendment to the recording statute, granting the opportunity for bona fide purchaser status to those buying under executory real estate contracts, was remedial and curative and thus should be applied retroactively.[5] It also held that the retroactive application of the statute did not impair any vested right that the Whitsells had.

Because the Court of Appeals decision conflicted with another appellate court decision, and because it appeared to conflict with a 1945 decision of this court,[6] we granted the Whitsells' and Tomlinson's petition for review. As noted at the outset, one issue is presented.

---

[4]*Tomlinson v. Clarke*, 60 Wn. App. 344, 803 P.2d 828, *review granted*, 116 Wn.2d 1022 (1991).

[5]*Tomlinson*, 60 Wn. App. at 352.

[6]*Peterson v. Paulson*, 24 Wn.2d 166, 163 P.2d 830 (1945).

## ISSUE

May a purchaser under a real estate contract be a bona fide purchaser if that purchaser learns of an unrecorded prior interest in the property before the purchase price has been paid in full and before legal title to the property has been acquired?

## DECISION

CONCLUSION. When applying the bona fide purchaser doctrine, we perceive no valid reason to distinguish between those who purchase real property under real estate contracts and those who purchase property under other financing arrangements. Therefore, a buyer who, without notice of a prior interest in the land, purchases that land in good faith under a real estate contract may take advantage of the bona fide purchaser doctrine to prove a superior interest in the property. This is so even though the full purchase price remains unpaid and even though the seller has retained legal title in order to secure payment under the contract.

The Whitsells argue that the Court of Appeals erred in holding that the Clarkes were bona fide purchasers of the property. They claim: (1) historically the law has required legal title to pass before one can be a bona fide purchaser; (2) recent changes in the common law did not result in a change of this particular substantive rule; (3) recent statutory changes did not result in a retroactive change in the rule; and (4) if the statutory changes are deemed to be retroactive, then the Whitsells are unfairly deprived of a vested contractual right in violation of due process. We disagree.

In 1984 the Legislature amended this state's recording statute, RCW 65.08, resolving, at least prospectively, the issue raised in this lawsuit. The statute grants qualified buyers, including those purchasing under real estate contracts, the opportunity to take advantage of the bona fide purchaser doctrine. Our decision in the case before us thus affects only those persons whose real estate contracts were

executed before June 7, 1984, the effective date of the statute.[7]

A real estate contract is an agreement for the purchase and sale of real property in which legal title to the property is retained by the seller as security for payment of the purchase price.[8] Legal title does not pass to the purchaser until the contract price is paid in full.

Historically, courts have treated real estate contracts differently from other property financing devices. This difference in treatment was justified somewhat by the contractual nature of the relationship between the buyer and seller, particularly by the inclusion of forfeiture clauses in the contracts. If a real estate contract created a *property* right in the real property, that right could be extinguished only by foreclosure and sale. If only a *contractual* right was created by the agreement, the contract could easily be forfeited at the seller's option and the seller could thus avoid the formal process associated with foreclosure.[9] This distinction is no longer meaningful. Since 1986 all forfeitures under real estate contracts must comply with the Real Estate Contract Forfeiture Act (the Act),[10] which requires a more formal and somewhat lengthier process than previously existed.[11] Any forfeiture initiated after January 1, 1986, is subject to the provisions of the Act.[12]

Although courts attempted to apply contract law rather than property law to determine the rights of the parties to

---

[7]Laws of 1984, p. ii.

[8]RCW 61.30.010(1). *See generally* 2 Washington State Bar Ass'n, *Real Property Deskbook* ch. 47 (2d ed. 1986).

[9]*See In re McDaniel*, 89 Bankr. 861, 865 (Bankr. E.D. Wash. 1988) (setting forth a history of the development of purchasers' rights under real estate contracts in Washington).

[10]RCW 61.30.

[11]*See generally* Hume, *The Washington Real Estate Contract Forfeiture Act*, 61 Wash. L. Rev. 803 (1986).

[12]RCW 61.30.910.

real estate contracts, the problems that arose during the life of an executory real estate contract — such as right to possession, risk of loss, right to rents or harvests, right to mortgage the land — were not easily solved by application of legal principles relating to contract law. Instead, it was the property concept of "ownership" that governed whether the buyer or seller had a particular right.[13] Thus, property law concepts also were frequently applied by the court when interpreting rights of purchasers under real estate contracts.

In 1925 this court attempted to resolve the confusion in *Ashford v. Reese*, 132 Wash. 649, 650, 233 P. 29 (1925), when it held that

> an executory contract of sale in this state *conveys no title or interest, either legal or equitable,* to the vendee . . .

(Italics ours.)

This harsh rule was the subject of considerable criticism[14] until its eventual demise in 1977.[15]

The Legislature responded to *Ashford* in 1927 by amending the recording statute to specifically exclude real estate contracts from the definition of "conveyances".[16] The recording act, at RCW 65.08.070, provided and continues to provide:

> A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. *Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose*

---

[13]*See generally* Hume, *Real Estate Contracts and the Doctrine of Equitable Conversion in Washington: Dispelling the* Ashford *Cloud,* 7 U. Puget Sound L. Rev. 233, 238 (1984).

[14]*See, e.g., Cascade Sec. Bank v. Butler,* 88 Wn.2d 777, 781, 567 P.2d 631 (1977) (listing several of the authorities that had criticized *Ashford*).

[15]*Cascade* overruled *Ashford v. Reese,* 132 Wash. 649, 650, 233 P. 29 (1925).

[16]Laws of 1927, ch. 278, § 1, p. 670; codified at RCW 65.08.060(3).

*conveyance is first duly recorded.* An instrument is deemed recorded the minute it is filed for record.

(Italics ours.)

The Legislature, however, did not prevent parties to real estate contracts from recording their transactions and giving notice to subsequent purchasers. Instead, the Legislature enacted a method for recording interests, whatever they might be, that existed under real estate contracts. RCW 65.08.080, originally enacted as Laws of 1927, ch. 278, § 3, p. 671, provided:

> An executory contract for the sale or purchase of real property . . . may be recorded in the office of the recording officer of any county in which any of the real property to which it relates is situated, and when so recorded shall be notice to all persons of the rights of the vendee under the contract.

This provision was repealed in 1984,[17] when RCW 65.08-.060(3) was amended to include real estate contracts within the definition of "conveyance".

Even before 1984, the recording act thus provided a means of giving constructive notice of interests created by real estate contracts.[18]

The severity of the *Ashford* rule was softened by this court on a case-by-case basis until the rule became all but ignored. As this court said in *Cascade Sec. Bank v. Butler*, 88 Wn.2d 777, 781, 567 P.2d 631 (1977), in overruling *Ashford*:

> Despite our failure to specifically overrule *Ashford,* we have distinguished it in so many ways that its sweeping language has become virtually meaningless.

Indeed, during the 52 years between the rulings in *Ashford* and *Cascade*, this court had "whittled away" the meaning of the *Ashford* doctrine.[19]

---

[17]Laws of 1984, ch. 73, § 2, p. 424.

[18]*See, e.g., Ellingsen v. Franklin Cy.*, 117 Wn.2d 24, 27, 810 P.2d 910 (1991).

[19]*Windust v. Department of Labor & Indus.*, 52 Wn.2d 33, 37, 323 P.2d 241 (1958).

Some of the holdings that conflicted with the *Ashford* doctrine were set forth by Justice Brachtenbach, in writing for the majority in *Cascade*, as follows:

> we have held the vendee to have certain rights totally inconsistent with the concept that a vendee has no title or interest, legal or equitable. For example, we have held that: a vendee may contest a suit to quiet title, *Turpen v. Johnson*, 26 Wn.2d 716, 175 P.2d 495 (1946); under the traditional land sale contract, the vendee has the right to possession of the land, the right to control the land, and the right to grow and harvest crops thereon, *State ex rel. Oatey Orchard Co. v. Superior Court*, [154 Wash. 10, 280 P. 350 (1929)]; a vendee has the right to sue for trespass, *Lawson v. Helmich*, 20 Wn.2d 167, 146 P.2d 537, 151 A.L.R. 930 (1944); a vendee has the right to sue to enjoin construction of a fence, *Kateiva v. Snyder*, 143 Wash. 172, 254 P. 857 (1927); a vendee's interest constitutes a mortgageable interest, *Kendrick v. Davis*, 75 Wn.2d 456, 452 P.2d 222 (1969); a vendee is a necessary and proper party for purposes of a condemnation proceeding, *Pierce County v. King*, 47 Wn.2d 328, 287 P.2d 316 (1955); a vendor's interest for inheritance tax purposes is personal property, *In re Estate of Eilermann*, 179 Wash. 15, 35 P.2d 763 (1934); a vendor's interest for purposes of succession and administration is personal property, *In re Estate of Fields*, 141 Wash. 526, 252 P. 534 (1927); a vendee may claim a homestead in real property, *Desmond v. Shotwell*, 142 Wash. 187, 252 P. 692 (1927); a vendee is a real property owner for attachment purposes, *State ex rel. Oatey Orchard Co. v. Superior Court, supra* at 11-12.

*Cascade*, 88 Wn.2d at 782.

*Cascade* then went on to hold that a real estate contract purchaser's interest is "real estate" within the meaning of the judgment lien statute.[20]

In *Cascade*, this court declined to adopt the doctrine of equitable conversion and further declined to announce a "rule for all cases". Instead, *Cascade* left to subsequent cases the responsibility of further defining the interests of sellers and purchasers "based upon a realistic examination of the nature of the interest in a particular context."[21]

---

[20]*Cascade*, 88 Wn.2d at 782.

[21]*Cascade*, 88 Wn.2d at 784.

Since *Cascade* was decided in 1977, only two appellate court decisions have examined the priority of interests of purchasers of the same parcel of land under real estate contracts. As noted above, these cases are the ones decided by Division One, when this case was in that court, and the case of *Reed v. Eller*, 33 Wn. App. 820, 664 P.2d 575, *review denied*, 99 Wn.2d 1015 (1983), decided by Division Two.

The *Reed* court relied on the common law rule that one claiming to be a bona fide purchaser for value must prove that legal title was acquired before notice of a prior purchaser's claim to the property was received.[22]

■ The law recognizes the importance of determining which of two purchasers has the superior interest. In discussing the bona fide purchaser doctrine, 8 G. Thompson, *Real Property* § 4290, at 222-23 (1963 repl.), states the purpose of the doctrine as follows:

> The land law has seen its years of progress marked by a continual struggle between one who had legal title to, or an equity or interest in or claim against real estate and one who in good faith parts with consideration in the honest belief that he is acquiring title from another. The law has long recognized that the massive public policy in favor of stimulation of commerce demands the fullest possible protection to a good faith purchaser for value. The bona fide purchaser for value without notice is the favored creature of the law.

In declining to follow *Reed*, the Court of Appeals in *Tomlinson v. Clarke*, 60 Wn. App. 344, 349-50, 803 P.2d 828, *review granted*, 116 Wn.2d 1022 (1991) stated that the *Reed* court

> failed to give proper weight to the Supreme Court's holding in *Cascade* and its unavoidable weakening of *Peterson* [*v. Paulson*, 24 Wn.2d 166, 163 P.2d 830 (1945)] and other cases that relied upon *Ashford* as the prevailing law.

■ Division One then applied the *Cascade* standard of realistically examining the nature of the interests argued, based upon the particular context in which they arose, and held:

---

[22]*Reed*, 33 Wn. App. at 826 (quoting *Glaser v. Holdorf*, 56 Wn.2d 204, 209, 352 P.2d 212 (1960)). *See also Meibach v. Colasurdo*, 102 Wn.2d 170, 175, 685 P.2d 1074 (1984); *Snuffin v. Mayo*, 6 Wn. App. 525, 527, 494 P.2d 497 (1972).

Such a realistic examination of the issue presented here leads us to conclude that a vendee to an executory contract should have the same opportunity to enjoy the protection of bona fide purchaser status as someone financing the transaction in some other way, such as through a deed.

*Tomlinson*, 60 Wn. App. at 350.

We agree with Division One of the Court of Appeals and, in so doing, overrule *Reed v. Eller, supra*, and other pre-*Cascade* cases inconsistent with this opinion.

Our decision is consistent with the decisions of other courts which have examined this issue. In one, a bankruptcy court in the Eastern District of Washington carefully analyzed the historical development of Washington's case and statutory law defining the rights and interests of purchasers under real estate contracts. *In re McDaniel*, 89 Bankr. 861 (Bankr. E.D. Wash. 1988). That court then held:

> This analysis leads to the inexorable conclusion that Washington treats the seller's interest under a real estate installment sales contract as a lien/mortgage-type security interest in real property. Washington does not now, nor as [*sic*] has it for a long time, considered the purchaser's interest under a real estate installment sales contract as creating a "mere" contract right. The remedies provided to the seller in the case of breach or nonperformance are those of a secured creditor. Washington law considers the purchaser's interest under the real estate contract as a property interest and the seller's interest under that contract as a lien-type security device.

*McDaniel*, 89 Bankr. at 869.[23]

We find no relevance in the historical distinction between real estate contracts and other forms of real property security devices. There is no valid reason to distinguish between those cases in which legal title is conveyed to secure the payment of a debt and those cases in which legal title is

---

[23]*See also Terry v. Born*, 24 Wn. App. 652, 655, 604 P.2d 504 (1979) (a real estate contract seller's retention of title is a security device functionally similar to a real estate mortgage or deed of trust); *Perry v. O'Donnell*, 749 F.2d 1346 (9th Cir. 1984) (tracing California's similar legal development in this area and holding that the bona fide purchaser doctrine applied to a purchaser of real property under a real estate contract).

retained to secure the payment of a debt.[24] In our view, the better approach under circumstances such as the one involved here is to treat all purchasers of real property alike, providing all with an opportunity to rely on the bona fide purchaser doctrine for protection of their interests.

In the present case, the unchallenged findings of fact state that the Whitsells did not record their contract until after the Clarkes had purchased the land. Further, the trial court found the Clarkes were unaware of the Whitsells' claims to and interest in the lakefront property. The Clarkes, therefore, had no actual or constructive notice of the Whitsells' claim at the time they executed the real estate contract. There is no question that the Clarkes are bona fide purchasers and, as between them and the Whitsells, they have a superior interest in the lakefront property in dispute.

Additional justification for holding the Clarkes were bona fide purchasers in this case is found in the 1984 amendment to the recording statute.[25] As a direct response to the decision in *Reed*, the Legislature voted unanimously to amend the recording statute to include real estate contracts within the meaning of conveyance.[26] The Legislative Report[27] states that the effect of the law is to bring real estate contract purchasers within the scope of the bona fide purchaser doctrine. It further shows the Legislature's express disapproval of *Reed* and the intent to negate the effects of the *Reed* decision. At the time the statute was amended the meaning of the law was unclear. After *Cascade Sec. Bank v. Butler*, 88 Wn.2d 777, 567 P.2d 631 (1977), the effect of the recording statute on those purchasing land under real estate contracts became unclear. When an amendment clarifies existing law and where that

---

[24]*See* 8A G. Thompson, *Real Property* § 4447 at 277-79 (1963 repl.).

[25]RCW 65.08.

[26]RCW 65.08.060(3).

[27]Final Legislative Report, 48th Legislature (1984), at 181 (Senate Bill 4371).

amendment does not contravene previous constructions of the law, the amendment may be deemed curative, remedial and retroactive.[28] This is particularly so where an amendment is enacted during a controversy regarding the meaning of the law.[29]

█ As the Court of Appeals stated, "A retroactive application of the 1984 amendments in effect confirms that a pre-1984 executory contract is a conveyance that qualifies for full protection under the recording act." *Tomlinson*, 60 Wn. App. at 352. The 1984 amendment did little more than bring the statute in line with the reasoning of *Cascade*. It therefore is curative, remedial and retroactive.

The Whitsells argue that a retroactive application of the amendment would impair vested contractual rights. The previous statute, RCW 65.08.080, provided a means by which the Whitsells could have recorded their interest in the Lake Stevens property. They purposely chose not to record the contract. Their purchase of the property and their decision to refrain from recording for more than 3 years occurred after *Cascade* was decided and before *Reed* was decided. Neither *Reed* nor the prior statute provide any vested contract rights to the Whitsells.

In essence the Whitsells took a calculated risk by not recording their real estate contract. By so doing, they avoided the City of Lake Stevens moratorium on subdividing, but failed to give notice to subsequent purchasers.

No vested right is affected by retroactive application of the statute.

The Clarkes requested and were granted attorneys' fees at trial and in the Court of Appeals based on a clause in their real estate contract providing for reasonable attorneys' fees and costs in the event of an action to enforce rights under the contract. As prevailing parties in this court, the Clarkes are entitled to reasonable attorneys' fees and costs incurred in this appeal.

---

[28]*State v. Jones*, 110 Wn.2d 74, 82, 750 P.2d 620 (1988).

[29]*Johnson v. Continental West, Inc.*, 99 Wn.2d 555, 559, 663 P.2d 482 (1983).

In sum, we hold as follows: that under the rationale of *Cascade*, a purchaser under a real estate contract can take advantage of the bona fide purchaser doctrine; the recording act amendments of 1984 are curative, remedial and retroactive; insofar as it is inconsistent with this decision, *Reed v. Eller*, 33 Wn. App. 820, 664 P.2d 515, *review denied*, 99 Wn.2d 1015 (1983) is overruled; the Clarkes have an interest in the lakefront property that is superior to that of the Whitsells; and the Clarkes are entitled to attorneys' fees and costs from the seller, Tomlinson.

The Court of Appeals is affirmed.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.