**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Nader SPAHI; Emperor West**
**Associates, Defendants–**
**Appellants.**

No. 97–36149.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1999.

Decided May 13, 1999.

John R. Muenster, Muenster & Koenig, Seattle, Washington, for defendants-appellants.

Richard E. Cohen, Assistant United States Attorney, Seattle, Washington, for plaintiff-appellee.

Before: FLETCHER, REINHARDT and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

In this appeal, we consider whether the government may acquire title by adverse possession in Washington after a failed forfeiture proceeding in which the property was improperly described. We hold that in this case, the United States did not satisfy the elements of adverse possession established under Washington law and cannot acquire title to land not included in the forfeiture action.

I

Nader Spahi and his partnership Emperor West Associates owned a warehouse at 1208 Fourth Street in Anacortes, Washington ("the warehouse property"). Alleging that Spahi had purchased the property with the proceeds of an illegal marijuana operation, the United States commenced a civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6) on February 20, 1990. The forfeiture complaint described the warehouse property by its commonly known street address, 1208 4th St., Anacortes, WA, and included its "buildings, improvements, appurtenances, fixtures, attachments, and easements." Attached to the complaint was a legal description of the property to be forfeited ("Parcel 1"), which described most, but not all, of the property owned by Spahi at this address, specifically:

All of Lots 15 and 16, Block 71; AND that portion of Lots 11 to 14, inclusive, Block 71, lying Southeasterly of a line that is 10 feet Southeasterly of and parallel with the center line of the right of way of the Great Northern Railway Company, as it existed on April 23, 1935, through said Block 71, MAP OF THE CITY OF ANACORTES, according to the plat thereof recorded in Volume 2 of Plats, pages 4 through 7, records of Skagit County, Washington.

The description omitted a small triangle of land which contained a corner of the warehouse and a railroad right of way ("Parcel 2") more particularly described as follows:

All that portion of Burlington Northern Railroad (formerly the Great Northern Railway Company) right of way lying within Block 71, "City of Anacortes", according to the plat recorded in volume 2 of plats, page 4, records of Skagit County, Washington, except any portion thereof lying northwesterly of a line parallel with and (10) ten feet as measured radially, northwesterly from the center line of said right of way.

Corporate predecessors of the Burlington Northern Railway had acquired title to Parcel 2 by patent from the United States granted in 1875, and recorded in 1881. Title was conveyed by quitclaim deed to Spahi on December 18, 1987 and recorded October 29, 1997.

After the complaint was filed, Spahi agreed to withdraw his claims and forfeit Parcel 1. The United States took possession of the warehouse property and required Spahi's tenant to sign a "tenant occupancy agreement" with the United States Marshal Service.

When the government was in the process of selling the warehouse property, it discovered that it had failed to include a description of Parcel 2 in its forfeiture complaint. Thereupon, the United States filed the instant complaint seeking to quiet title in Parcel 2, and, in the alternative,

asserting that Parcel 2 should be forfeited pursuant to 28 U.S.C. § 881(a)(6). Spahi resisted the complaint based on his purchase of Parcel 2 from Burlington Northern Railroad, Inc. The district court dismissed the forfeiture claim as barred by the statute of limitations.

Following a bench trial on the quiet title claims, the district court granted judgment to the United States, holding that it had established ownership by adverse possession under color of title pursuant to Washington Revised Code § 7.28.50. In the alternative, the court found that the United States held an easement over Parcel 2 by prior use.

Spahi appealed the court's decision, but did not seek a stay of the execution of the court's judgment. Because no stay was issued, the government sold the warehouse property, including Parcel 2, to a third party.

## II

■ The government contends that this appeal should be dismissed as moot because Spahi did not obtain a stay and the United States has sold the warehouse property to a bona fide good faith purchaser who cannot be compelled to relinquish its interest in the property.

■ Under the bona fide purchaser doctrine, as it exists in Washington, a good faith real estate purchaser for value who is without actual or constructive notice of another's interest in the property purchased has the superior interest in the property. *See* Wash. Rev.Code § 65.08; *Tomlinson v. Clarke,* 118 Wash.2d 498, 825 P.2d 706, 707 (Wash.1992) (en banc). The third party purchaser in this instance does not qualify as a bona fide purchaser for value because he took title with notice of Spahi's claim. In addition, title was transferred to the third party purchaser by quitclaim deed, which conveyed only the grantor's interest, subject to valid title claims and encumbrances. *See Thorstad v. Federal Way Water & Sewer Dist.,* 73

Wash.App. 638, 870 P.2d 1046, 1048 (Wash. Ct.App.1994) (citing *Corning v. Aldo*, 185 Wash. 570, 55 P.2d 1093 (Wash.1936)). Because the third party purchaser acquired title by quitclaim deed, with knowledge of Spahi's claim, the third party does not qualify as a bona fide purchaser and the appeal is not moot.

## III

Under Washington law, there are four primary statutes under which a party may acquire title by adverse possession: (1) Washington Revised Code section 4.16.20, under which a party may acquire title by adversely possessing real property for a period of ten years; (2) section 7.28.070, under which a party may acquire title by adversely possessing real property under color of title and paying all taxes levied during that period; (3) section 7.28.050, which applies a seven year statute of limitations on the filing of any action to recover real property when the same is adversely possessed by one who has "a connected title in law or equity deducible of record from this state or the United States;" and (4) section 7.28.080, under which title to vacant land may be acquired by a person who, in good faith, has color of title and pays taxes on the property for seven years without necessarily "possessing" the property by hostile use.

### A

Because the government did not adversely possess Parcel 2 for ten years prior to filing the quiet title action, it cannot establish title under section 4.16.020. It is undisputed that the government did not seize Parcel 1 until 1990, so even if, *arguendo*, Parcel 2 were seized with Parcel 1, the requisite 10 years had not passed at the time of the filing of this case in May 1996.

Because the real property subject of this action was not vacant land, section 7.28.080 is inapplicable. Therefore, the government must recover, if at all, under the color of title or connected title statutes.

### B

Washington's adverse possession by color of title statute provides that:

Every person in actual, open and notorious possession of lands or tenements under claim and color of title, made in good faith, and who shall for seven successive years continue in possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section.

Wash. Rev.Code § 7.28.070 (1998). Under Washington law, "[c]olor of title is that which is a semblance or appearance of title, but is not title in fact nor in law." *Scramlin v. Warner*, 69 Wash.2d 6, 416 P.2d 699, 701 (Wash.1966) (quoting *Bassett v. City of Spokane*, 98 Wash. 654, 168 P. 478, 479 (Wash.1917)). "Color of title must purport to pass title, and the claimant must believe it to be a valid title." *Daubner v. Mills*, 61 Wash.App. 678, 811 P.2d 981, 983 (Wash.Ct.App.1991). "[A]n instrument insufficiently describing property is not color of title." *Wingard v. Heinkel*, 1 Wash.App. 822, 464 P.2d 446, 447 (Wash.Ct.App.1970). "One may not claim property under color of title when the property is not described in the deed." *Heikkinen v. Hansen*, 57 Wash.2d 840, 360 P.2d 147, 149 (Wash.1961).

The judgment of forfeiture did not include Parcel 2. Therefore, the United States did not have "color of title" as to

Parcel 2 under Washington law and cannot recover under section 7.28.070.

## C

■ For similar reasons, the United States cannot recover under the "connected title" statute, which provides:

That all actions brought for the recovery of any lands, tenements or hereditaments of which any person may be possessed by actual, open and notorious possession for seven successive years, having a connected title in law or equity deducible of record from this state or the United States, or from any public officer, or other person authorized by the laws of this state to sell such land for the nonpayment of taxes, or from any sheriff, marshal or other person authorized to sell such land on execution or under any order, judgment or decree of any court of record, shall be brought within seven years next after possession being taken as aforesaid, but when the possessor shall acquire title after taking such possession, the limitation shall begin to run from the time of acquiring title.

Wash. Rev.Code § 7.28.050. This statute differs in structure from the other adverse possession statutes. It provides for a statute of limitations on actions filed to recover real property "when the same is possessed by one who has record title running back to a state or federal deed, to a tax sale, or to a state or federal judicial sale." W. Stoebuck, *The Law of Adverse Possession in Washington,* 25 Wash. L.Rev. 53, 56 (1960). The statute validates titles which might otherwise be void "because of some defect in the deed or sale or the proceedings leading up to them." *Id.* Thus, rather than providing a party with an avenue to establish a right, the statute confirms defective record title taken from the government if no challenge is made within the statutory period.

■ The district court concluded that the United States had a connected title in law or equity deducible of record from the

United States on two grounds: (1) the forfeiture complaint regarding Parcel 1 was sufficient to demonstrate a connected claim to Parcel 2 and (2) pursuant to 21 U.S.C. § 881(h), title in the United States vested as of the date of the earliest act giving rise to forfeiture.

The district court's first conclusion is in error because the legal description of Parcel 2 is not included in either the forfeiture complaint nor the judgment and decree of forfeiture. As a consequence, the forfeiture proceeding did not vest the United States with any claim to record title to Parcel 2; rather, the United States only obtained record title to Parcel 1. Thus, the forfeiture proceeding did not serve to establish "a connected title in law or equity deducible of record from this state or the United States," and was insufficient to commence the running of the statute of limitations under section 7.28.050.

The district court also held that section 7.28.050 was applicable in light of its conclusion that the United States acquired title in August 1986 pursuant to 21 U.S.C. § 881(h). That provision states that title to property subject to forfeiture vests in the United States upon the commission of the act giving rise to forfeiture. *See id.* The district court reasoned that because the initial act was committed in August 1986, title vested as of that date.

■ The initial flaw in the district court's conclusion is that Spahi did not hold title to Parcel 2 in August 1986—the Burlington Northern Railway did. Without establishing that the Burlington Northern Railway consented or had knowledge of the predicate criminal acts, the United States may not acquire title by forfeiture to property owned by Burlington Northern Railway. *See* 21 U.S.C. § 881(a)(7).

■ Second, assuming, *arguendo,* that the requisite predicate criminal acts were occurring when Spahi obtained title to Parcel 2, the forfeiture statute would

still not operate to provide the United States with legal title to Parcel 2. Title to real property may "vest" in the United States upon commission of the act giving rise to forfeiture, but vesting is not self-executing. Indeed, under the forfeiture statutes, "nothing vests in the government until some legal step shall be taken for the assertion of its right, after which, for many purposes, the doctrine of relation carries back the title to the commission of the offense." *United States v. Parcel of Land,* 507 U.S. 111, 125, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (quoting *United States v. Grundy,* 3 Cranch 337, 350–51, 2 L.Ed. 459 (1806)). Thus, the United States is required to perfect title by legal action before title may vest. The initial forfeiture suit did not include Parcel 2, and the district court correctly held that the forfeiture claim in the instant suit was barred by the statute of limitations. Thus, no judicial action has perfected the title of the United States. That being so, no "connected title" which is "deducible of record" exists by virtue of 21 U.S.C. § 881(h), and the United States cannot establish title under section 7.28.050 by virtue of that provision either.

## IV

■ As an alternative holding, the district court concluded that the United States had established an implied easement by prior use of Parcel 2. Generally speaking, under Washington law, an implied easement exists when property over which a servitude has been imposed is divided and an easement is reasonably necessary for use of one of the severed parcels. *See, e.g., Bailey v. Hennessey,* 112 Wash. 45, 191 P. 863, 864 (1920). The principle behind the creation of easements implied from prior use is that the conveyance of a dominant estate should be accompanied by the advantages and burdens which were appurtenant to the estate prior to the separation of the title. *See Roe v. Walsh,* 76 Wash. 148, 135 P. 1031, 1033–34 (Wash.1913). The paradigmatic implied easement is presented when an owner sells part of his or her property to which access may only be gained through an existing road which passes over the seller's property. *See, e.g. Roberts v. Smith,* 41 Wash. App. 861, 707 P.2d 143, 145–46 (Wash.App. 1985).

■ To establish an easement by implication in this case, four elements must be shown: (1) that defendants owned both Parcel 1 and Parcel 2; (2) that the defendants imposed a degree of servitude upon both properties; (3) that the two properties were severed; and, (4) that the easement sought by the government was reasonably necessary for the enjoyment and use of Parcel 1. *See Dreger v. Sullivan,* 46 Wash.2d 36, 278 P.2d 647, 648 (Wash.1955).

■ It is readily apparent that the circumstances of this case do not lend themselves to an implied easement analysis. Although there was unity of title, there was no easement or other servitude imposed on both the parcels during the period of joint ownership. The easement sought by the government is not to obtain access to Parcel 1, to which it already has unrestricted access. Rather, the government seeks to integrate both parcels for the exclusive use of its grantees. This notion is antithetical to the concept of an easement, because an easement is a right to use land of another for a specific purpose *not inconsistent* with the general use of the property owner. *See 7 Thompson on Real Property,* Thomas Edition § 60.02(a) (David A. Thomas ed., 1994). Indeed, Spahi has a better claim, under implied easement theory, to an easement over Parcel 1 to obtain access to Parcel 2.

■ Thus, the government's implied easement theory fails because it did not establish both the pre-existing servitude and the requirement of reasonable necessity. However, on a more fundamental level, application of an easement analysis is inappropriate when the easement claimant is seeking to acquire exclusive use of the land.

## V

In summary, the appeal is not moot because the acquiring party was not a bona fide purchaser for value without notice of Spahi's claim. The district court properly dismissed the government's forfeiture claim as barred by the statute of limitations. The government cannot establish adverse possession under section 4.16.20 because ten years has not elapsed. The government cannot establish adverse possession under section 7.28.080 because vacant land is not at issue. The government cannot establish adverse possession under section 7.28.070 because it did not have color of title. The government is not entitled to confirm title under section 7.28.050 because it did not have a connected title deducible of record. The government is not entitled to an easement by implication because the servitude was not imposed on the land prior to severance and because the easement is not reasonably necessary.

The judgment of the district court is reversed. Spahi is awarded his costs.