[No. 46227-0-I. Division One. July 30, 2001.]

ESTATE OF NADER SPAHI, *Respondent*, v. HUGHES-NORTHWEST, INC., *Appellant*.[†]

[†]This opinion was reported in the advance sheets of the Washington Appellate Reports as NADER SPAHI, *Respondent,* v. HUGHES-NORTHWEST, INC., *Appellant*.

764

*Russell J. Reid* (of *Davies, Roberts & Reid*); and *Jason J. Valtos*, for appellant.

*Thomas S. Hayward* (of *Nethercutt & Hayward*), for respondent.

BECKER, A.C.J. — At issue is an order divesting Hughes-Northwest, Inc., of its title to a parcel of property purchased at an execution sale upon a judgment that was later reversed. The order quieted title in respondent Nader Spahi, who had successfully appealed the earlier judgment without superseding it. A litigant who appeals an unsuperseded judgment affecting an interest in property takes the risk that a third party will purchase the property at an execution sale before the judgment can be reversed. Knowledge that the judgment is being appealed does not deprive the third party of protection as a purchaser in good faith; a successful appellant's recourse is against the judgment creditor only. And although Spahi obtained a ruling in another forum that Hughes is not a purchaser in good faith, Hughes was not a party and is not collaterally estopped by that ruling. Accordingly, we reverse and direct that title be quieted in Hughes-Northwest.

The United States brought a civil forfeiture action against Nader Spahi in 1990. Spahi's warehouse property in Anacortes was the object of the suit. Spahi did not contest the complaint and agreed to forfeit the land contained in the complaint's legal description.

The United States took possession of the warehouse property and offered it for sale at a forfeiture auction. Appellant Hughes-Northwest, Inc., offered to purchase the property. Before closing the sale, the government discovered that the legal description attached to the forfeiture complaint omitted a small triangle of land known as "Parcel 2." This parcel contained a corner of the warehouse and a railroad right of way.

The United States filed a complaint against Spahi in federal district court to quiet title to Parcel 2. Hughes was not a party to this suit. Following a bench trial, the district court concluded that the United States had established ownership of Parcel 2 by adverse possession or alternatively by easement based on prior use. The court entered judgment quieting title in the United States on October 24, 1997.

Spahi appealed to the Ninth Circuit. The federal rules permit an appellant to obtain from the trial court a stay of judgment during the pendency of an appeal by giving a supersedeas bond. *See* FED. R. CIV. P. 62(d); FED. R. APP. P. 7 and 8.[1] Spahi did not supersede the judgment.

Because there was no stay, the United States executed upon the quiet title judgment and completed its sale of the warehouse property to Hughes in February 1998 by way of a Marshal's deed, which granted both parcels of the warehouse property to Hughes by quitclaim. The deed stated that the quiet title judgment against Spahi barred him "from asserting any right, title, estate, lien or interest in or to the real property described." Hughes took possession of the property.

In an opinion decided on May 13, 1999, the Ninth Circuit found the district court had erred by concluding that the United States had acquired title to Parcel 2 by adverse possession or easement. *United States v. Spahi*, 177 F.3d 748, 752 (9th Cir. 1999). Although Spahi's opening brief in

---

[1] Our state Rules of Appellate Procedure provide a similar mechanism for delaying the enforcement of a trial court decision in a civil case. *See* RAP 7.2(c), 8.1(b)(2), 8.1(c).

the Ninth Circuit had asked the court to remand with instructions to return him to ownership of Parcel 2,[2] the court did not address this request, but simply reversed the district court's quiet title judgment. The United States did not appeal further.

Spahi then initiated the present litigation by suing Hughes in Skagit County Superior Court. The suit sought to quiet title to Parcel 2 in Spahi and to eject Hughes. Hughes moved for summary judgment dismissal. Spahi filed a cross-motion to establish his own title by summary judgment. The trial court granted summary judgment quieting title to Parcel 2 in Spahi. Hughes appeals from that order, and also appeals from the trial court's denial of Hughes' motion for summary judgment.

## FAILURE TO SUPERSEDE

The appellate court reviews a grant of summary judgment de novo, engaging in the same inquiry as the trial court. *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). The facts in this case are undisputed. The primary legal issue is whether Spahi's failure to supersede or stay the quiet title judgment obtained by the United States in federal district court precludes him from defeating the title Hughes obtained through the execution sale. We hold that Spahi's failure to supersede is fatal to his claim.

Spahi contends that the title Hughes took from the United States was only as good as the title the United States had. This contention is correct. *See Thorstad v. Fed. Way Water & Sewer Dist.*, 73 Wn. App. 638, 642, 870 P.2d 1046 (1994) (a quitclaim deed conveys only the grantor's interest subject to valid encumbrances so that the grantee is in the same position as the grantor). Spahi further contends that when the Ninth Circuit determined that the

---

[2] Clerk's Papers at 52.

United States had no interest in the property to convey, the title earlier conveyed by the United States became worthless. "As the result of the 9th Circuit's holding, Hughes-NW acquired nothing by virtue of the quitclaim deed."[3] This contention is incorrect. Under Washington law,[4] a trial court judgment is presumed valid, and unless the judgment is superseded, a judgment creditor has specific authority to execute on that judgment. *State v. A.N.W. Seed Corp.*, 116 Wn.2d 39, 44, 802 P.2d 1353 (1991).[5] Thus, Hughes acquired the valid title the United States held at the time of the execution sale.

By superseding a property judgment while it is on review, an appellant can avoid the risk that a third party will acquire valid title. A supersedeas bond serves two purposes: it serves the interest of the judgment debtor by delaying the execution of the judgment, and it serves the interest of the judgment creditor by ensuring that the judgment debtor's ability to satisfy the judgment will not be impaired during the appeal process. *Lampson Universal Rigging, Inc. v. Wash. Pub. Power Supply Sys.*, 105 Wn.2d 376, 378, 715 P.2d 1131 (1986). Thus, if Spahi had superseded the federal district court judgment, he would have prevented the United States from selling Parcel 2, ensuring that it could be restored to him if he obtained reversal of the judgment on appeal. If he did not obtain a reversal, the supersedeas procedure would have also ensured a secure source of reimbursement for any loss incurred by the United States as a result of its inability to enforce the judgment during review. *See* RAP 8.1(b)(2); *see also* 11

---

[3] Br. of Resp't at 21.

[4] We apply Washington law as no choice of law of issue has been raised and both parties rely on Washington law.

[5] *A.N.W. Seed* is consistent with federal law. *See In re Combined Metals Reduction Co.*, 557 F.2d 179, 190 (9th Cir. 1977) (it is well established that an appeal will not affect the validity of a judgment or order during the pendency of the appeal, absent a stay or supersedeas); *In re Fed. Facilities Realty Trust*, 227 F.2d 651, 654 (7th Cir. 1955) ("From the inception of the federal judiciary, a judgment could be executed while an appeal therefrom was pending unless timely application was made by the appellant to the trial court or to a judge or justice of the appellate tribunal for a stay.").

CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2905 (1995) (discussing FED. R. CIV. P. 62(d) and stating that the amount of bond usually will be set in an amount that will permit satisfaction of the judgment in full, together with costs, interest, and damages for delay). An appellant is not obligated to supersede a judgment from which it is appealing; it must, however, post security if it desires to stay enforcement of an adverse judgment pending appeal. *Lampson*, 105 Wn.2d at 378-79. By failing to supersede the judgment, Spahi took the risk that title to the property would pass into the hands of a third party during the period of appellate review.

■ Spahi's position is that the risk of losing the property in the event that the appellant wins on appeal should be assumed by the third party purchaser. Our rules of appellate procedure do not support that position. RAP 12.8 describes the recourse available in state court to an appellant who has successfully obtained reversal or modification of a judgment requiring the transfer of property. Ordinarily, the trial court is obliged to restore the property to the appellant. But if the property in the meantime has been acquired by a "purchaser in good faith," that third party's interest "shall not be affected" by the appellate decision:

> If a party has voluntarily or involuntarily partially or wholly satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders and authorize the issuance of process appropriate to restore to the party any property taken from that party, the value of the property, or in appropriate circumstances, provide restitution. An interest in property acquired by a purchaser in good faith, under a decision subsequently reversed or modified, shall not be affected by the reversal or modification of that decision.

RAP 12.8.

Spahi contends that it logically follows from the wording of RAP 12.8 that an interest in property acquired by a purchaser *not* acting in good faith necessarily *will* be affected by the reversal of a trial court's decision regarding ownership of that property. Spahi argues Hughes was not a

purchaser in good faith because Hughes closed the purchase of Parcel 2 knowing that Spahi's appeal was pending.

■■■■ To have the protection of the bona fide purchaser doctrine, a third party purchaser must be without constructive notice of another's claimed interest in real property. *Tomlinson v. Clarke*, 118 Wn.2d 498, 825 P.2d 706 (1992). Spahi assumes that filing an appeal gives notice that the appellant claims an interest in the property. This assumption is unfounded. Because Spahi did not win at the district court level, he could not claim to have a present interest in the property when he filed his appeal. Notice of the pending appeal was notice only of the fact that Spahi was attempting to reacquire an interest in the property.

It is a well-established policy in the law that a purchaser at a judicial sale who is not a party to the record will be protected "notwithstanding the existence of errors which would cause a reversal of such decree or judgment by the court of review." *Prince v. Mottman*, 84 Wash. 287, 298, 146 P. 841 (1915). *See also Grand Inv. Co. v. Savage*, 49 Wn. App. 364, 368-69, 742 P.2d 1262 (1987).

The *Restatement of Restitution* confirms that a purchaser at an execution sale "is not prevented from being a bona fide purchaser by the fact that he has knowledge that an appeal is pending or even that he has knowledge of the grounds for appeal, except where he knows that the judgment was obtained by fraud." RESTATEMENT OF RESTITUTION § 74 cmt. i (1937). The *Restatement* offers the following illustration: "A obtains a valid judgment against B. Execution is levied and C purchases B's land at the execution sale for $3,000 which he pays to the sheriff, receiving a deed thereto and going into possession. The judgment is reversed. B is not entitled to restitution of the land from C." RESTATEMENT OF RESTITUTION § 74 cmt. i, illus. 22.

Our Supreme Court cited the *Restatement of Restitution* section 74 with approval in *A.N.W. Seed*, 116 Wn.2d at 46. There, the state obtained a default judgment against a seed company for Consumer Protection Act violations. Without superseding the judgment, the company appealed the de-

nial of its motion to vacate. The State, having obtained a writ of execution, sold company property at a sheriff's sale. The company then won its appeal. Having achieved reversal of the unsuperseded judgment, the company obtained from the trial court an order of restitution against the State under RAP 12.8 for the fair market value of the property. The State appealed. The Washington Supreme Court, reversing, held that the company was entitled only to the amount the State received as proceeds of execution, not the fair market value of the property. The Court first noted that because of the sale, the property itself could not be restored; "restoration of its value is the remedy." *A.N.W. Seed*, 116 Wn.2d at 44 (citing RESTATEMENT OF RESTITUTION § 74). The Court then determined that the word "value" in RAP 12.8 did not mean fair market value. The Court explained that the seed company's failure to stay the execution of the judgment was fatal to its claim for restitution of fair market value because that would mean every notice of appeal acted as an automatic supersedeas:

> Equally important is RAP 8.1(a) which "provides a means of delaying the enforcement of a trial court decision in a civil case", *i.e.*, by supersedeas. RAP 8.1(b). If defendants' theory prevails, the judgment debtor need not post a supersedeas bond or other security. The debtor would know that he would get the most favorable of either the sale proceeds or market value plus interest. In effect the notice of appeal would be a substitute for supersedeas. That is not the purpose or intent of RAP 7.2(c) and RAP 8.1.

*A.N.W. Seed*, 116 Wn.2d at 48. *See also Malo v. Anderson*, 76 Wn.2d 1, 5, 454 P.2d 828 (1969) (If appellant's knowledge of pending appeal prevented her doing anything with the property except at her own risk, the appeal itself would act as a supersedeas; no prevailing party would expend any money on property awarded in an unsuperseded judgment for fear of losing the investment.).

Following *Prince, Grand Investment Co., A.N.W. Seed, Malo,* and the *Restatement,* we hold that a purchaser of property is a "purchaser in good faith" for purposes of RAP

12.8 notwithstanding knowledge of the pendency of an appeal. In this case, there is no allegation that the United States obtained its judgment by fraud. Hughes obtained legal title and paid value for Parcel 2 before the reversal of the judgment occurred. Because the sale was lawful, Hughes enjoys protection "as a bona fide purchaser." RE-STATEMENT OF RESTITUTION § 74 cmt i. In RAP 12.8, that status is described as being a "purchaser in good faith."

Because Hughes was a purchaser in good faith, Spahi's only potential recourse is against the United States, for restitution of the value the United States received for Parcel 2 in the sale to Hughes. *See A.N.W. Seed*, 116 Wn.2d at 47 (" '[T]he judgment defendant is only entitled to so much as the plaintiff has realized upon the execution.' ") (quoting 2 J. G. SUTHERLAND, DAMAGES § 469, at 1544 (John R. Berryman, ed., 4th ed. 1916)). Spahi is not entitled to a return of Parcel 2.

## COLLATERAL ESTOPPEL

Spahi contends that the superior court's quiet title order must nevertheless be affirmed because Hughes is collaterally estopped by the Ninth Circuit's opinion from claiming to be a good faith purchaser.

One of the arguments presented by the United States in the Ninth Circuit appeal was that Spahi's appeal should be dismissed as moot "because Spahi did not obtain a stay and the United States has sold the warehouse property to a bona fide good faith purchaser who cannot be compelled to relinquish its interest in the property." *United States v. Spahi*, 177 F.3d at 751. The Ninth Circuit concluded that the appeal was not moot because Hughes was not a bona fide purchaser:

> Under the bona fide purchaser doctrine, as it exists in Washington, a good faith real estate purchaser for value who is without actual or constructive notice of another's interest in the property purchased has the superior interest in the property. *See* Wash. Rev. Code § 65.08; *Tomlinson v. Clarke*, 118 Wash.2d 498, 825 P.2d 706, 707 (Wash.1992) (en banc). The

third party purchaser in this instance does not qualify as a bona fide purchaser for value because he took title with notice of Spahi's claim. In addition, title was transferred to the third party purchaser by quitclaim deed, which conveyed only the grantor's interest, subject to valid title claims and encumbrances. *See Thorstad v. Federal Way Water & Sewer Dist.*, 73 Wash.App. 638, 870 P.2d 1046, 1048 (Wash.Ct.App. 1994) (citing *Corning v. Aldo*, 185 Wash. 570, 55 P.2d 1093 (Wash. 1936)). Because the third party purchaser acquired title by quitclaim deed, with knowledge of Spahi's claim, the third party does not qualify as a bona fide purchaser and the appeal is not moot.

*Spahi*, 177 F.3d at 751-52.

The United States petitioned for a rehearing. The United States questioned the court's bona fide purchaser analysis, and suggested that a more appropriate rationale for holding that Spahi's appeal was not moot was that Spahi, if he prevailed, could obtain restitution from the United States.[6] The Ninth Circuit denied the petition for rehearing.[7]

 Collateral estoppel, or issue preclusion, prevents relitigation of an issue after the party against whom the doctrine is applied has had a full and fair opportunity to litigate his or her case. *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262, 956 P.2d 312 (1998). Before the doctrine may be applied, the party asserting the doctrine must prove: "(1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice." *Nielson*, 135 Wn.2d at 263. Spahi bears the burden of proving collateral estoppel. *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987).

If all the elements of collateral estoppel were present we

---

[6] Clerk's Papers at 67.

[7] Clerk's Papers at 73.

would be bound to the Ninth Circuit's decision that Hughes was not a good faith purchaser even though we analyze the issue differently and reach the opposite result. *See Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 799-800, 982 P.2d 601 (1999) (Where a party to the prior litigation "had a full and fair hearing of the issues, and did not attempt to overturn an adverse outcome, collateral estoppel may apply, notwithstanding an erroneous result."). We conclude, however, that collateral estoppel is not warranted here because Hughes was not a party to the litigation in federal court between the United States and Spahi, and was not in privity with the United States.

Spahi argues that Hughes is in privity with the United States as its successor in title to Parcel 2. A successive relationship to the same property may, in some circumstances, establish privity:

> "Privity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming under the same title. It denotes mutual or successive relationship to the same right or property. The binding effect of the adjudication flows from the fact that when the successor acquires an interest in the right it is then affected by the adjudication in the hands of the former owner."

*United States v. Deaconess Med. Ctr.*, 140 Wn.2d 104, 111, 994 P.2d 830 (2000) (quoting *Owens v. Kuro*, 56 Wn.2d 564, 568, 354 P.2d 696 (1960). Why privity is strictly construed in the context of claim or issue preclusion has been explained as follows:

> The justification for a strict construction is simple. Where the parties against whom collateral estoppel is being asserted have had no previous opportunity to raise certain issues, their claim on those issues should not be barred. On the other hand, one whose property interests have already been asserted and litigated by his or her predecessor should be prevented from reasserting and relitigating the same interests.

*State ex rel. Dean v. Dean*, 56 Wn. App. 377, 381, 783 P.2d 1099 (1989).

According to the rule as stated in *Deaconess Medical Center* and *Dean*, privity based on a successive relationship to the same property arises only if the adjudication of an owner's asserted rights in the property has already occurred when the owner transfers the property to a successor. In that situation, collateral estoppel applies to prevent the successor from relitigating issues already determined against the original owner. "Were the rule otherwise, a wrongdoer, by successively authorizing others to intermeddle with the property, could force the owner to repeatedly relitigate his title against the very same claim of ownership in the wrongdoer which was vainly asserted in the original action." *Watkins v. Siler Logging Co.*, 9 Wn.2d 703, 723, 116 P.2d 315 (1941).

Here, however, the United States had already sold Parcel 2 to Hughes, and did not have its own title and right to possession at stake when it attempted to convince the Ninth Circuit that Hughes was a good faith purchaser. We have twice held that RAP 12.8, which protects the interests of a third party, may be asserted only by the third party. *Puget Sound Athletic Club, Inc. v. Seven Fourteen Mkt. St. Assocs.*, 34 Wn. App. 478, 481, 663 P.2d 128 (1983); *Grand Inv. Co. v. Savage*, 49 Wn. App. 364, 370, 742 P.2d 1262 (1987). Hughes is the only entity entitled to assert the protection of RAP 12.8 in defense of its title, and has had no previous opportunity to assert it. Under these circumstances it is not unfair or vexatious to require Spahi to relitigate the question of Hughes' status as a purchaser in good faith.

Spahi has failed to establish that Hughes was in privity with the United States. We conclude the Ninth Circuit decision does not collaterally estop Hughes from asserting its right to the protection afforded by RAP 12.8 to purchasers in good faith. The order of summary judgment quieting title in Spahi against Hughes accordingly must be reversed.

The reversal of an order granting summary judgment to one party does not necessarily mean that the other party's motion for summary judgment must be granted. But

granting summary judgment to the other party can be an appropriate remedy in a case where the two motions take diametrically opposite positions on the dispositive legal issue, and raise no issues of fact. *See Weden v. San Juan County*, 135 Wn.2d 678, 709-10, 958 P.2d 273 (1998). This is such a case. On remand, the trial court is directed to enter summary judgment in favor of Hughes.

Reversed.

WEBSTER and ELLINGTON, JJ., concur.