# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| OTTO GUARDADO, an individual, | No. 53643-9-II |
| Respondent, | |
| v. | |
| MARK and MICHELLE TAYOR, husband and wife, and their marital community, | UNPUBLISHED OPINION |
| Petitioners, | |
| DIANA GUARDADO, an individual, and JAMES KIMBALL d/b/a REALTY PRO, INC., | |
| Defendants. | |

GLASGOW, A.C.J.—Mark and Michelle Taylor purchased Otto Guardado's property in 2016, after a trial court ordered Guardado to sell the property. After the Taylors purchased the property, we reversed and vacated the trial court's order on appeal. Guardado sued the Taylors for specific restitution, meaning conveyance of the property back to him, and unjust enrichment.

The Taylors assert that they were good faith purchasers under RAP 12.8, so the reversal does not affect their interest in the property. They admit to knowing of Guardado's pending appeal, but they argue that this does not defeat their status as good faith purchasers because Guardado failed to stay enforcement of the trial court's order. They further argue that a recorded lis pendens on the property was released the day before the sale, so the property was free of encumbrances when they purchased it.

We hold that the Taylors' actual knowledge of Guardado's pending appeal did not defeat their status as good faith purchasers because they purchased the property pursuant to a court order that was effective at the time. However, the record shows a lis pendens was still recorded at the time of the sale's closing. A recorded lis pendens precludes subsequent purchasers from taking the property in good faith. Therefore, the Taylors are not entitled to the protections afforded by RAP 12.8.

We conclude that the trial court was correct to deny the Taylors' motion for partial summary judgment. However, because we conclude there is no genuine dispute of material fact and judgment should be entered in favor of Guardado as a matter of law, we reverse in part, remand, and direct the trial court to enter judgment in favor of Guardado. We leave it to the trial court to exercise its discretion to determine the appropriate remedy.

FACTS

I. SKAMANIA COUNTY PROCEEDINGS AND THE SALE OF GUARDADO'S PROPERTY

Otto and Diana Guardado[1] dissolved their marriage by agreed order in 2008 in Skamania County. In the dissolution decree, Guardado was awarded the couple's Vancouver home, and he agreed to pay the mortgage on the residence.

In 2012, Diana executed a quitclaim deed, releasing her interest in the property, which she claims was in response to an oral agreement with Guardado whereby he would remove her name from the mortgage. However, Guardado failed to remove Diana's name from the mortgage, and his failure to make consistent, timely payments adversely affected Diana's credit. In 2014, she

---

[1] Because she shares a last name with Otto, we refer to Diana Guardado by her first name for clarity.

brought suit in Skamania County for breach of contract, and in 2016, the trial court ruled in her favor. On May 6, 2016, before the trial court had reduced its oral ruling to writing, Guardado filed a notice of appeal. Guardado also asked this court for a stay.

On May 26, 2016, the trial court issued its findings of fact and conclusions of law resolving the contract action. It determined that Guardado violated the dissolution decree's hold harmless provision and concluded, "The sale of the [p]roperty is the elegant solution to this manifest injustice." Clerk's Papers (CP) at 107. The trial court decided to modify the original dissolution decree pursuant to CR 60(b)(11), which permits modification of a dissolution decree in extraordinary circumstances to prevent manifest injustice. The trial court ordered that a special administrator be appointed to list the property with a realtor of their choice and advised, "The remedy for a failure to cooperate with the special master or realtor shall be a drastic reduction in the sale price of the [p]roperty." CP at 109. The trial court explained, "The primary purpose of the listing of the [p]roperty shall be getting it sold; the secondary purpose shall be to realize as much equity as possible." *Id.*

In the meantime, we denied Guardado's request for a stay. We advised that Guardado could stay enforcement of the judgment by filing a supersedeas bond or cash in the amount of $10,000.

On June 2, 2016, the trial court formally ordered the dissolution decree modified to require a sale of the property. It further ordered that Guardado would need to post a $40,000 supersedeas bond if he wished to stay enforcement of the judgment.

Guardado paid $10,000 toward superseding the judgment, and several weeks later, Kim Bailey, an acquaintance of Guardado's, attempted to post a bond pursuant to RAP 8.4 to supersede the judgment. Guardado also filed an emergency motion for a stay with this court. We denied

Guardado's emergency motion, and we also ruled that Bailey's supersedeas bond failed to meet the requirements of RAP 8.1, so it did not stay the trial court's enforcement of its June 2, 2016 order. Thus, no stay or supersedeas bond prevented sale of the property.

On October 10, 2016, Guardado recorded a lis pendens in Clark County. The court-appointed special administrator also suggested that all potential buyers be provided with copies of Guardado's court filings so that they could go "into [the purchase] with eyes wide open after full disclosure" of Guardado's appeal of the order requiring sale. CP at 181.

Mark and Michelle Taylor were interested in purchasing Guardado's property. Mark Taylor stated, "I requested information from [Guardado] about his appeal, which he promptly e[-]mailed to me that day." CP at 183. Guardado e-mailed Mark Taylor on November 15, 2016 and advised, "The next purchaser (if any) will be subject to the decision of the appeals court. I am, of course, asking for my property rights to be restored. You can find out more info, and my arguments, from the brief." CP at 185. Guardado attached multiple documents to this e-mail, including the amended complaint, his appellate brief, and the lis pendens.

In addition, the title insurance report prepared for the Taylors by Clark County Title noted Guardado's pending action and the lis pendens recorded on the property. The Taylors initialed next to this notice. They also signed an acknowledgment that the title company had "strongly suggested seeking legal advice" but they had declined. CP at 194.

Diana responded to the lis pendens on the property by filing a motion to hold Guardado in contempt. On the night of November 16, 2016, Guardado sent an e-mail to Bailey that shows he thought he could go to jail as a consequence. He signed a release of the lis pendens that same day. At the contempt hearing on November 17, 2016, Diana's counsel admitted that he had filed the

motion to hold Guardado in contempt "in order to convince Mr. Guardado to release [the lis pendens]." Verbatim Report of Proceedings (Nov. 17, 2016) at 15. The trial court declined to hold Guardado in contempt for continuing to interfere with the sale, but it ordered him not to have any contact with potential buyers until after the closing.[2]

That same day, November 17, 2016, the statutory warranty deed conveying the property to the Taylors was signed. The court-appointed special administrator signed on Guardado's behalf.

The deed was recorded on November 18, 2016 at 9:55 a.m. and issued recording number 5348564. The release of the lis pendens was recorded at the same time and issued the next recording number, 5348565.

The Taylors paid $240,000.00 for the property. After paying off the mortgage and various fees, the remaining $15,579.55 was paid to Guardado. The Taylors paid Guardado an additional $7,000.00 to move out. Guardado filed a second lis pendens on the property on December 28, 2016.

We granted review of the trial court's order modifying the dissolution decree to require a sale of the property. On August 22, 2017, we issued an opinion in which we held that "the trial court erred in granting Diana's CR 60 (b)(11) motion because it did not have authority under CR 60(e)(1) to modify the dissolution decree in the separate breach of contract action." *Guardado v.*

---

[2] In their reply brief, the Taylors moved to strike the verbatim report of the contempt proceedings, in addition to multiple factual allegations from Guardado's brief, the supplemental clerk's papers, and argument from Guardado's brief regarding the timing of the lis pendens release's recording. Guardado filed a responsive motion to strike the Taylors' motion to strike, arguing that it violated RAP 17.4(d). We denied both motions.

In reviewing a trial court's summary judgment decision, we consider "only evidence and issues called to the attention of the trial court." RAP 9.12. However, "[w]e may affirm on any basis supported by the record whether or not the argument was made below." *Bavand v. OneWest Bank FSB*, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

*Guardado*, 200 Wn. App. 237, 239, 402 P.3d 357 (2017). We reversed and vacated the trial court's modification of the dissolution decree, and we remanded for further proceedings. *Id.*

On February 1, 2018, the trial court entered two orders vacating its prior judgments under CR 60 and RAP 12.8. One order was entered under the cause number for the breach of contract action, and the other order was entered under the cause number for the dissolution proceedings. Both orders stated, "The [c]ourt shall afford further relief necessary to place the parties in the position they occupied prior to trial." CP at 23, 25.

II. CLARK COUNTY PROCEEDINGS AND GUARDADO'S ATTEMPT TO REGAIN HIS PROPERTY

Guardado then filed a separate complaint in Clark County Superior Court for specific restitution of real estate and unjust enrichment against the Taylors.[3] The Taylors asserted as an affirmative defense that they "were good-faith purchasers, the property had no recorded *lis pendens* at the time of the sale, and Plaintiff Guardado failed to post a supersedeas bond to stay enforcement of the underlying [c]ourt [o]rder directing sale of the property." CP at 35. They also claimed that they "justifiably relied on representations made by [the realtor] and the fact that the title was free and clear at the time the purchase and transaction was confirmed and transferred." CP at 36.

The Taylors also filed a counterclaim to cancel the second lis pendens and quiet title. They then filed a motion for partial summary judgment, moving the court to dismiss Guardado's claims but retain the Taylors' counterclaim.

---

[3] Guardado also sued Realty Pro Inc., the company that facilitated the sale of Guardado's property. The claims against Realty Pro were dismissed, and we affirmed that dismissal in a separate appeal. *Guardado v. Guardado*, No. 53636-6-II, slip op. at 2 (Wash. Ct. App. Feb. 17, 2021) (unpublished) https://www.courts.wa.gov/opinions/pdf/D2%2053636-6-II%20Unpublished%20 Opinion.pdf.

At the summary judgment hearing, the Taylors relied on *Estate of Spahi v. Hughes-Northwest, Inc.*, 107 Wn. App. 763, 27 P.3d 1233 (2001), to argue that because Guardado failed to post a supersedeas bond and released his lis pendens, his claim for restitution failed. The trial court cited *United Savings & Loan Bank v. Pallis*, 107 Wn. App. 398, 27 P.3d 629 (2001), and suggested that regardless, the Taylors may not be bona fide purchasers because they had notice of Guardado's ongoing claim to the property and the release of the lis pendens was not signed until the day before closing. The trial court denied the Taylors' motion for partial summary judgment, determining that material issues of fact existed regarding whether or not they were good faith purchasers.

The Taylors filed a motion for reconsideration. The trial court denied this motion, but it certified the question of whether the Taylors were bona fide purchasers to this court for discretionary review. The Taylors appealed both the trial court's denial of their motion for partial summary judgment and its denial of their motion for reconsideration. We granted discretionary review to answer the question of "whether the trial court erred in failing to apply *Estate of Spahi* regarding the Taylors' status as bona fide purchasers, and instead relying on *Pallis*." Ruling Granting Discr. Review.

ANALYSIS

The Taylors argue that their knowledge of Guardado's appeal did not defeat their status as good faith purchasers because they bought the property pursuant to a court order that was presumptively valid and Guardado failed to post a supersedeas bond. They further argue that Guardado's lis pendens was released, so "reasonable inquiry into the status of the home's title would have revealed nothing. No encumbrance was recorded." Br. of Appellant at 20. The Taylors

are correct that Guardado's failure to post a supersedeas bond meant that the sale could proceed, but they are incorrect that a reasonable inquiry into the status of the home's title on the date of their closing "would have revealed nothing." *Id.* A lis pendens was still recorded on the property on November 17, 2016, the date the sale closed, and the Taylors took no steps to have it canceled before closing the sale.

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c). If, after reviewing all the evidence, a reasonable person could reach only one conclusion, summary judgment is proper. *Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). We review summary judgment orders de novo, "'engaging in the same inquiry as the trial court.'" *Id.* (quoting *Afoa v. Port of Seattle*, 176 Wn.2d 460, 466, 296 P.3d 800 (2013)).

We may also remand for entry of summary judgment in favor of the nonmoving party, if on appeal we determine that the nonmoving party is entitled to judgment as a matter of law. "[G]ranting summary judgment to the other party can be an appropriate remedy in a case where the two motions take diametrically opposite positions on the dispositive legal issue, and raise no issues of fact." *Spahi*, 107 Wn. App. at 777; *see also Impecoven v. Dep't of Revenue*, 120 Wn.2d 357, 365, 841 P.2d 752 (1992) (reversing the trial court's grant of summary judgment and ordering summary judgment in favor of the nonmoving party where the facts were not in dispute).

I. SUPERSEDEAS BOND AND VALIDITY OF SALE

As a preliminary matter, the trial court was permitted to enforce its order requiring sale while Guardado's appeal was pending because the order was not stayed. A supersedeas bond is

"intended to preserve the status quo." *Guest v. Lange*, 195 Wn. App. 330, 338, 381 P.3d 130 (2016). Filing a supersedeas bond or alternate security approved by the trial court automatically stays enforcement of a trial court decision affecting property rights. RAP 8.1(b)(2). Unless "enforcement of a judgment or decision has been stayed as provided in rules 8.1 or 8.3," the Rules of Appellate Procedure permit the trial court to enforce its decision and permit other parties to "take action premised on the validity of a trial court judgment or decision." RAP 7.2(c). Where a property owner fails to stay enforcement of an adverse trial court decision, they bear the risk that their property will be sold to a third party prior to a reversal on appeal. *Spahi*, 107 Wn. App. at 766.

This does not mean, however, that the former property owner may not pursue remedies after the property is sold. *See, e.g.*, *id.* at 773 (permitting recovery against the United States for proceeds of sale where recovery against bona fide purchaser was barred); *see also Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 569, 276 P.3d 1277 (2012) (rejecting the argument that because a former property owner "failed to use their presale remedies, their postsale challenge [was] barred" in the context of a foreclosure sale). A stay and a lis pendens have different effects. A stay, obtained through a supersedeas bond or a successful motion, would prevent the transfer of the real property and ensure an appealing party could retain ownership should they prevail on appeal. A lis pendens, absent a stay, could entitle an appealing party to recovery the property under RAP 12.8 if they ultimately prevail on appeal, but RAP 12.8 protects good faith purchasers, and it does not guarantee that a sale must be unwound and real property returned. Other remedies are within the trial court's discretion under this rule.

Here, Guardado failed to file a valid supersedeas bond pursuant to RAP 8.1(b)(2). He posted $10,000, but this was insufficient to satisfy the trial court's order mandating $40,000, which he did not appeal. *See* RAP 8.1(h) (allowing objection "to a supersedeas decision of the trial court by motion in the appellate court"). Bailey attempted to post alternate security on the property, but this was not approved by the trial court, and we also rejected the attempt.

Without a supersedeas bond to stay enforcement of the trial court's decision, Guardado bore the risk that his property would be sold prior to a reversal on appeal. The trial court's order was presumed valid, and the Taylors were entitled to act in accordance with it and purchase Guardado's home. RAP 7.2(c); *see also Spahi*, 107 Wn. App. at 766.[4] This does not preclude Guardado from seeking relief now, however.

Guardado's lis pendens was recorded in Clark County on October 10, 2016. Because Guardado recorded this lis pendens when the property was still in his name and his appeal was pending, we reject the Taylors' characterization of it as "fraudulent" or "legally unjustified," even

---

[4] Guardado incorrectly argues that the trial court's order requiring the sale of his property was void because the trial court lacked subject matter jurisdiction to enter it. In our prior opinion in *Guardado*, we held that the trial court erred when it ordered the sale of the property "because it did not have authority under CR 60(e)(1) to modify the dissolution decree in the separate breach of contract action." 200 Wn. App. at 239. Our opinion did not discuss the trial court's jurisdiction.

The Washington Constitution vests the superior courts with original jurisdiction in all matters involving real property and in all matters of divorce and dissolution. WASH. CONST. art. 4, § 6. "Exceptions to the jurisdictional grant in article 4, section 6 are to be narrowly construed." *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 206, 258 P.3d 70 (2011).

A judgment may be void where the trial court "lacks the inherent power to make or enter the particular order involved." *Bergren v. Adams County*, 8 Wn. App. 853, 856, 509 P.2d 661 (1973); *see also Ronald Wastewater Dist. v. Olympic View Water & Sewer Dist.*, 196 Wn.2d 353, 372, 474 P.3d 547 (2020) ("[T]he court's authority to enter a particular order is . . . part of subject matter jurisdiction."). But here, the trial court did not lack the inherent power to enter a CR 60(b)(11) order modifying the dissolution decree at all; it lacked the authority to enter the order under the cause number for Diana's breach of contract action.

though it was not accompanied by a stay. CP at 50. The lis pendens served its purpose of putting

subsequent purchasers on notice that they would be bound by the outcome of the pending litigation.

The Taylors could have moved to cancel the lis pendens, but they did not.

## II. APPLICATION OF RAP 12.8

Under RAP 12.8, if a party satisfies a trial court order that is modified on appeal, then the

trial court will "authorize the issuance of process appropriate to restore to the party any property

taken from that party, the value of the property, *or* in appropriate circumstances, provide

restitution." (Emphasis added.) This is an equitable remedy, and "'trial courts have broad

discretionary power to fashion equitable remedies.'" *Ehsani v. McCullough Family P'ship*, 160

Wn.2d 586, 589, 159 P.3d 407 (2007) (quoting *In re Foreclosure of Liens*, 123 Wn.2d 197, 204,

867 P.2d 605 (1994)). Thus, the trial court may, but is not required to, unwind a real property sale

and return the property to its former owner. An alternative under the rule is financial compensation.

RAP 12.8 also provides that if a "purchaser in good faith" acquires an interest in the

disputed property pursuant to the trial court's decision, then the purchaser's interest "shall not be

affected by the reversal or modification of that decision." Therefore, the controlling question is

whether the Taylors were purchasers in good faith entitled to the protection that RAP 12.8 affords.

Washington courts have used the terms "purchaser in good faith" under RAP 12.8 and

"bona fide purchaser" interchangeably. *See, e.g.*, *Grand Inv. Co. v. Savage*, 49 Wn. App. 364, 370,

742 P.2d 1262 (1987). Washington is a "race-notice" jurisdiction. *See* RCW 65.08.070. Thus, "to

qualify as a bona fide purchaser . . . under Washington law, a party must pay value for an interest

in land, *record its interest first*, and act in good faith without notice of a prior party's unrecorded

interest." *OneWest Bank, FSB v. Erickson*, 185 Wn.2d 43, 65, 367 P.3d 1063 (2016) (emphasis

added). Whether a purchaser acts as a bona fide purchaser is a mixed question of fact and law. *Miebach v. Colasurdo*, 102 Wn.2d 170, 175, 685 P.2d 1074 (1984).

A.      Effect of Actual Knowledge of Pending Appeal

The Taylors do not dispute that they had actual knowledge prior to sale that Guardado claimed an ongoing interest in the property, and they knew that he was pursuing an appeal of the trial court's order requiring sale. The Taylors argue, however, that this knowledge is not legally relevant where they purchased the property pursuant to a court-ordered sale. We agree.

In *Spahi*, the United States brought a civil forfeiture action against Spahi, took possession of his property, and sold his property to Hughes-Northwest at a forfeiture auction. 107 Wn. App. at 766-67. The legal description of Spahi's property omitted a small triangle of land, so the United States filed a complaint to quiet title on that portion. *Id.* at 767. The district court quieted title in the United States. *Id.* Spahi appealed without superseding the judgment, and the United States completed its sale to Hughes-Northwest. *Id.* After Spahi prevailed on appeal, he attempted to eject Hughes-Northwest from the property, arguing that where an appeal is pending, the third party purchaser always bears the risk of losing the property upon a reversal. *Id.* at 770. Division One disagreed and held that an appeal is not an "automatic supersedeas" and that "a purchaser of property is a 'purchaser in good faith' for purposes of RAP 12.8 notwithstanding knowledge of the pendency of an appeal." *Id.* at 772-73.

This holding is consistent with the *Restatement (First) of Restitution*, which states, "A person is not prevented from being a bona fide purchaser by the fact that he has knowledge that an appeal is pending or even that he has knowledge of the grounds for appeal, except where he knows that the judgment was obtained by fraud." § 74 cmt. i (1937). The Washington Supreme Court has

"indicated that *Restatement of Restitution* § 74 is an appropriate source to be used in construing RAP 12.8." *Ehsani*, 160 Wn.2d at 591. Other jurisdictions have reached similar conclusions. *See, e.g.*, *2DP Blanding, LLC v. Palmer*, 2017 UT 62, 423 P.3d 1247, 1252 ("[W]hen an appellant neither obtains a stay of execution nor timely records a *lis pendens*, he has no recourse against third parties who lawfully acquire the property. . . . This conclusion holds regardless of whether [the third parties] had inquiry or even actual notice of the litigation and pending appeal."); *Da Silva v. Musso*, 76 N.Y.2d 436, 442, 559 N.E.2d 1268 (1990) ("[T]he 'good faith' of a purchaser who has acquired the property for value during the pendency of a claimant's appeal is not vitiated by the purchaser's actual knowledge of the appeal.").

This principle—that one can be a purchaser in good faith with knowledge of a pending appeal—typically arises in cases involving foreclosures and execution sales, rather than judicial sales. In *Spahi*, the property at issue was sold by the federal government at a forfeiture auction, and section 74 comment i of the *Restatement* specifically addresses the rights of purchasers at an execution sale. Execution sales are distinct from judicial sales in that execution sales are held to recover a designated sum of money, whereas judicial sales are based on court orders to sell a specific property. 30 AM. JUR. 2D *Executions and Enforcement of Judgments* § 308 (2021). Further, execution sales are conducted by a ministerial officer, often the sheriff, whose authority "rests in the law and on the writ and does not, as in judicial sales, emanate from the court." *Id.*

However, part of the rationale for protecting third party purchasers at foreclosure and execution sales is to promote the public policies of finality and trust in the courts—a rationale that also applies to judicial sales. *See, e.g.*, *Steinbrecher v. Steinbrecher*, 759 N.E.2d 509, 518 (Ill. 2001) (recognizing a "strong public policy favoring the finality and permanence of judicial sales,"

in part because otherwise "no person would purchase real property involved in a judicial proceeding"); *see also* RAP 7.2(c) ("Any person may take action premised on the validity of a trial court judgment or decision until enforcement of the judgment or decision is stayed.").

Guardado is contesting a judicial sale that effectuated the intent of a court order. In both *Spahi* and here, the court was the entity that either established ownership or authorized a sale. Public policy supports ensuring that purchasers can benefit from the reliability of these court orders. We therefore follow *Spahi* and hold that the Taylors' actual knowledge of Guardado's pending appeal did not prevent them from purchasing his property in good faith where the sale was occurring pursuant to a court order that had not been stayed.

B.    Effect of Recorded Lis Pendens

A separate issue, not discussed in *Spahi*, is whether Guardado's lis pendens prevented the Taylors from purchasing the property in good faith under RAP 12.8. *See 2DP Blanding*, 423 P.3d at 1252 (recognizing that even though knowledge of a pending appeal is insufficient to defeat one's status as a good faith purchaser, a recorded lis pendens is "one exception to [the] general rule" that an appellant loses their rights to property conveyed to a third party where there is no stay).

In their opening brief, the Taylors state that Guardado released his lis pendens on the property prior to its sale, and they describe this as the "only material fact" related to the lis pendens. Br. of Appellant at 20. In their reply brief, the Taylors further argue that the timing of the release's recording—at the same time as the statutory warranty deed was recorded, but with a subsequent recording number—is irrelevant. We disagree.

Bona fide purchaser status may be defeated by a recorded lis pendens. Once a lis pendens is filed with the county auditor, it serves as constructive notice to "every person whose conveyance

14

or encumbrance is subsequently executed or subsequently recorded . . . [that they] shall be bound by all proceedings taken after the filing of such notice to the same extent as if [they] were a party to the action." RCW 4.28.320; *see also* RCW 7.28.260 ("In an action to recover possession of real property, the judgment rendered therein shall be conclusive . . . if the party in whose favor the judgment is rendered shall have filed a notice of the pendency of the action as required by RCW 4.28.320."). Trial courts have discretion to order the cancellation of a lis pendens, however, "on application of any person aggrieved and on good cause shown and on such notice as shall be directed or approved by the court." RCW 4.28.320.

When interpreting and applying a statute, "[o]ur ultimate objective is to ascertain and carry out the legislature's intent." *Wrigley v. State*, 195 Wn.2d 65, 71, 455 P.3d 1138 (2020). "We construe the statute as a whole, giving effect to all of the language used and interpret provisions in relation to one another." *Id.* We recognize that a difference in language signals a difference in the legislature's intent. *Ronald Wastewater Dist. v. Olympic View Water & Sewer Dist.*, 196 Wn.2d 353, 366, 474 P.3d 547 (2020). And "'[a]s a default rule, the word "or" does not mean "and" unless legislative intent clearly indicates to the contrary.'" *Ctr. for Envtl. Law & Policy v. Dep't of Ecology*, 196 Wn.2d 17, 33, 468 P.3d 1064 (2020) (alteration in original) (quoting *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 319, 190 P.3d 28 (2008) (plurality opinion)).

A lis pendens is effective "[f]rom the time of [its] filing." RCW 4.28.320. Instruments are recorded "in the order [they are] filed," RCW 65.04.040, and "[a]n instrument is deemed recorded the minute it is filed for record," RCW 65.08.070. The timing of the filing is important, not because a recorded lis pendens grants a superior substantive right to the property over all instruments subsequently recorded, but because it "mak[es] effective whatever decree may be rendered in favor

of the plaintiff . . . *regardless of conveyances made or recorded subsequent to the filing* of the notice of lis pendens." *Merrick v. Pattison*, 85 Wash. 240, 248, 147 P. 1137 (1915) (emphasis added).

In defining "subsequent purchaser or encumbrancer," RCW 4.28.320 encompasses "every person whose conveyance or encumbrance is subsequently executed *or* subsequently recorded." (Emphasis added.) Unlike the statutory language describing the lis pendens, which focuses exclusively on the time of recording, the statutory language defining a "subsequent purchaser" considers the time at which a conveyance is merely executed—a date that may occur prior to the filing or recording of the conveyance. In *Pallis*, Division One applied this provision and charged a lender with constructive notice of another party's interest in the property where there was a "recorded lis pendens *at the time* [*the lender*] *closed its loan transaction*." 107 Wn. App. at 408 (emphasis added). The *Pallis* court held that even though no supersedeas bond had been filed, the lender could not be a purchaser in good faith under RAP 12.8 because it had constructive notice of a prior interest in the property through the recorded lis pendens at the time the transaction closed. *Id.*

In contrast, where a trial court orders the county auditor to cancel a lis pendens, "such cancellation shall be evidenced by the recording of the court order." RCW 4.28.320. Unlike the statutory language defining a "subsequent purchaser," which considers the time at which a conveyance is executed *or* recorded, the statutory language detailing court-ordered cancellations expressly states that cancellations are effective only when recorded. *Cf. Colby v. Interlaken Land Co.*, 88 Wash. 196, 200, 152 P. 994 (1915) ("[W]here the parties to a contract provide therein that the performance or nonperformance *shall be evidenced by* an architect's certificate, such evidence

16

is the only method of proving the fact." (emphasis added)). Where the legislature uses different language, particularly within the same statute, we recognize that it intends a different meaning. *See Ronald Wastewater Dist.*, 196 Wn.2d at 366. Therefore, the relevant date for a cancellation of a lis pendens is the date when the court's order is recorded, not the date when it is executed.

The lis pendens statute does not specify what action is necessary to effectuate the cancellation of a lis pendens that is not court-ordered, but we see no reason to apply a different standard where the release of a lis pendens is initiated by a property owner. Just as the court's execution of a cancellation order is insufficient to effectuate the cancellation, the property owner's execution of a release form is insufficient to effectuate the release. Analogizing to the language of RCW 4.28.320, we hold that the release of a lis pendens is evidenced by its recording, not its execution. This analysis is also consistent with the principle that constructive notice exists to bar prospective purchasers from acting in good faith whenever a prior interest remains recorded on the property. Until its cancellation or release is recorded, a lis pendens remains recorded and therefore effective.

Here, Guardado recorded a lis pendens on October 10, 2016. From that date, the lis pendens served as constructive notice to any subsequent purchaser of Guardado's property that they would "be bound by all proceedings . . . to the same extent as if [they] were a party to the action." RCW 4.28.320. The Taylors could have moved for the trial court to order cancellation of the lis pendens, but they did not.

Although Guardado signed the release of the lis pendens on November 16, 2016, it was not recorded until November 18, 2016. The Taylors closed on the property on November 17, 2016, when the lis pendens was still recorded with the county auditor. Therefore, the lis pendens was

17

still effective at the time the Taylors closed and, as a result, they had constructive notice as a matter of law of Guardado's interest in the property at the time they executed the property sale. RCW 4.28.320.

Because the recorded lis pendens was effective at the time the sale was executed, the Taylors were not purchasers in good faith entitled to the protections afforded by RAP 12.8. *See Pallis*, 107 Wn. App. at 408. Both Guardado and the title insurance company directly communicated to the Taylors the fact that a lis pendens was recorded. Yet, the Taylors chose not to seek the advice of legal counsel as advised. They never asked the trial court to cancel the lis pendens either, which they could have done under RCW 4.28.320 as an aggrieved party. Furthermore, the Taylors chose to proceed with their purchase quickly, rather than wait to execute the sale until after Guardado's release had been recorded. The Taylors were subsequent purchasers, as defined in RCW 4.28.320, and they purchased Guardado's property subject to the outcome of his pending appeal.

We therefore affirm the trial court's denial of the Taylors' motion for summary judgment. In addition, because the dispositive facts here—the date the sale was executed and the date of the release's recording—are not in dispute, and because Guardado is entitled to summary judgment as a matter of law, the trial court is directed to enter summary judgment in favor of Guardado on remand. *See Spahi*, 107 Wn. App. at 777; *Impecoven*, 120 Wn.2d at 365.

It is within the trial court's discretion to fashion an equitable remedy. *Ehsani*, 160 Wn.2d at 589. The trial court may "authorize the issuance of process appropriate to restore to [Guardado] any property taken from [him], the value of the property, or . . . provide restitution." RAP 12.8.

CONCLUSION

The trial court was correct to deny the Taylors' motion for partial summary judgment. However, because the Taylors were not good faith purchasers, there is no genuine dispute of material fact, and judgment should be entered in favor of Guardado as a matter of law. We reverse in part, remand, and direct the trial court to enter judgment in favor of Guardado. We leave it to the trial court to exercise its discretion to determine the appropriate remedy.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Maxa, J.

Sutton, J.